[Civil No. 3359.   Filed June 1, 1934.]

[33 Pac. (2d) 286.]

TASSO COE, Appellant, v. MYRTLE HAYES WIN-
CHESTER, Executrix of the Estate of RAN-
NEY VAN NORMAN WINCHESTER, De-
ceased, Appellee.

Messrs. Ellinwood & Ross, Mr. Wm. H. McKay, Mr. Francis J. Ryley and Mr. Norman S. Hull, for Appellant.

Messrs. Knapp, Boyle & Thompson, for Appellee.

ROSS, C. J.—Ranney Van Norman Winchester and Tasso Coe were partners in a merchandise brokerage business under the firm name of Winchester-Coe Company, in Phoenix and Tucson, Arizona, from July 1, 1924, until May 22, 1930. On this last date Winchester died. The widow, Myrtle Hayes Winchester, was appointed executrix of his estate. The survivor, Tasso Coe, refused to account to her for any portion of the partnership assets, whereupon she brought suit for an accounting in which suit she was sustained by the trial court. Coe has appealed.

Before stating the grounds of the appeal and the contentions of the parties, it seems best that the facts, which are not in dispute, should be given.

Originally the partnership contract was oral. The record does not disclose its terms in detail, but it was one in which they were equal partners. On May 8, 1926, they entered into the following written contract:

"We, Tasso Coe and R. V. Winchester, doing business as Winchester-Coe Company, agree to operate a merchandise brokerage business, dividing the profits equally.

"We agree that neither of us shall sign bonds, or endorse any notes, unless done jointly.

"As a result of a ten-thousand dollar life insurance policy taken out by each of us, Coe's with the Aetna and Winchester's with the Pacific Mutual Life, premiums on which are to be paid by Winchester-Coe Company. In event of Coe's death, his wife or heirs is to receive the face of this policy, and Winchester receives Coe's interest in the business. In the event of Winchester's death his wife or heirs to receive the face of the policy and Coe receives Winchester's interest in the business.

"Signed by us this 8th. day of May, 1926.

"Tasso Coe
"R. V. Winchester

"Witness:
"J. M. Aitken
"A. T. Long."

The only evidence *aliunde* the contract throwing light thereon is a letter written by Winchester to Coe on January 25, 1926, three months and thirteen days before the contract was signed, which reads as follows:

"Dear Tasso:—

"The two Kansas City Life grafters were in this morning: I signed an application for $10,000, providing they sold you and it goes thru alright.

"My idea of the proposition is as follows: In case of my death my policy would be paid to my estate, you to receive the entire business. In case you died your policy would be paid to your wife and I would

receive the entire business, the two policies to be paid by the firm.

"I think this is an excellent proposition and think we should go on with it.

"When you have bought and passed let me know and I will have my medical examination and go on thru with it.

"Yours truly,<br>"Bob."

Coe testified that he typed the contract, while Winchester "more or less" dictated it. The assets of the partnership consisted of personalty only, and its net worth at the time of Winchester's death was $19,819.39; one item thereof being $8,000 for the partnership "good will."

The partners were married and their contributions to the partnership were from the marital community of each. While the wives of the members of the firm were not actually or nominally partners, therein, because the assets of the firm were community property they had a direct contingent interest in such assets. Under the community law of this state the spouses own their common property and the wife's interest is equal to that of the husband's. Such being the rule, the assets of the partnership belonged in equal parts to the partners and their wives. The wife, however, during coverture has no power of disposition of the community personalty. The law, for reasons of convenience and expediency, places that power exclusively in the husband, who may exercise it in any way he chooses, except that he cannot make a testamentary disposition of his wife's interest or dispose of it in fraud of her rights. *La Tourette* v. *La Tourette*, 15 Ariz. 200, 137 Pac. 426, Ann. Cas. 1915B 70. These are the only limitations on the husband's control or disposition of the community personalty.

The trial court took the view that Winchester by the contract effectively disposed of his interest in the partnership, which was fixed as one-fourth of the assets, to Coe, but that he could not and did not dispose of his wife's one-fourth interest therein to Coe. The appellee contends that the court's conclusions were correct, whereas appellant contends that Winchester's agency over the community vested him with full power and authority to dispose of the entire community interest in the partnership, and that he did dispose of such interest by the partnership contract of May 8th.

We are satisfied that the agency of Winchester over the community personal property vested him with full and complete power to make a contract in the nature of the one in question. We know of no legal reason, and indeed none is suggested, against the husband's exercising such power over the community personalty. The contract certainly was beneficial to the wife of the partner that died first, for the reason that she obtained $10,000 cash instead of her husband's one-half interest in a business worth only $19,819.39, itemized $11,819.39 in personalty and $8,000 "good will." Without the insurance arrangement the appellee's share would have been a little over $5,000 of the tangible assets and one-half of whatever might have been realized for the partnership "good will" upon a falling market in 1930 and since. It is apparent that the reason which prompted the partners to reduce their contract to writing was not that they feared each other, or that they wanted a written memorial of their agreement, but that their primary purpose in doing so was that the wife of the one who should first die would be provided for as well or better than if she took her deceased husband's one-half interest, and the survivor would have the business without having forced upon him a partner

not of his choosing or someone unfit or incapable of contributing the necessary skill to make the business successful. By this arrangement the survivor secured the business and an existing policy of insurance for $10,000 in favor of his wife. Whether his wife would receive the face of her policy depended upon his ability to continue to pay the premiums. If the business proved unprofitable because of hard times or depressions, and future premiums were defaulted, his wife would get nothing. The arrangement certainly was an admirable one and was made by the two partners to provide for their wives when they could no longer do so. The mutual promises of the partners and the performance of his promise by Coe and the happening of the event upon which he was to have the partnership business all concurred to make the contract binding not only as to the marital community interest but as to the partnership interest, if the contract so intended.

The trial court, however, was of the opinion that the language of the contract describing the interest the survivor was to receive limited it to one-fourth of the partnership. The wording from which this conclusion was drawn is:

"In the event of Winchester's death, his wife or heirs to receive the face of the policy and Coe receives Winchester's interest in the business."

This language and the contract should be considered from the standpoint of the men who used the language and entered into the contract and the purpose they intended to accomplish.

"Courts, in the construction of contracts, look to the language employed, the subject-matter and the surrounding circumstances. They are never shut out from the same light which the parties enjoyed when the contract was executed, and accordingly they are entitled to place themselves in the same situation as

the parties who made the contract, so as to view the circumstances as they viewed them, and so as to judge of the meaning of the words and of the correct application of the language to the things described. . . . "  6 R. C. L. 849, § 239.

It should be remembered that Winchester and Coe were partners and that they were equal partners "dividing the profits equally." While their wives had a contingent interest in the business, after all its debts and obligations were liquidated, they were not partners in the business. The expression in the contract, "Winchester's interest in the business," describing the interest conveyed must have meant to the partners that if one of them received the other's interest in the partnership he would have the entire business. Neither was thinking when this contract was entered into of the contingent interest of his wife. The wife was being cared for by the insurance policy. If anything outside of the contract itself and the situation of the parties and their circumstances were needed to show that it was intended that the survivor should have the whole business, it is found in Winchester's letter to Coe in which he says:

"My idea of the proposition is as follows: In case of my death my policy would be paid to my estate, you to receive the entire business. In case you died your policy would be paid to your wife and I would receive the entire business, the two policies to be paid by the firm.

"I think this is an excellent proposition and think we should go on with it."

While the general rule is that preliminary negotiations leading up to a contract may not be used to vary or contradict the written instrument, they may be considered for the purpose of determining the meaning and intention of the parties.

"If the previous negotiations make it manifest in what sense they understood and used those terms, they furnish the best definition to be applied in the interpretation of the contract itself." 6 R. C. L. 839, § 228.

The letter written by Winchester to Coe can leave no doubt as to what the partners intended. It does not contradict or vary the contract, but fully and completely explains that the survivor was to have the entire business upon the happening of the contingency named. Any other construction of the contract would defeat the intention of the parties, and that the court ought not to do if it can be helped.

It is suggested by appellee that the contract is in the nature of a testamentary disposition of his wife's community interest and for that reason cannot stand. The trial court, correctly we think, held to the contrary. In *McKinnon* v. *McKinnon,* (C. C. A.) 56 Fed. 409, 412, where a similar contract was before the court, it was said:

"The partnership articles involved in the present controversy were neither intended as a deed or a will. They constitute an executory agreement, which determines the rights of the parties *inter se,* and provides what disposition shall be made of the partnership property on the happening of a certain event. In the state of Missouri, where these articles were signed, and where both partners at the time resided and carried on business, it is as well settled, as it is in any state of this Union, that an agreement by a person, upon a valuable consideration, to give to another the whole or a part of his property at the promisor's death, will be specifically enforced in equity, both as to real and personal property, if the consideration is duly rendered by the promisee."

See, also, *Matter of Borden's Estate,* 95 Misc. 443, 159 N. Y. Supp. 346; *Murphy* v. *Murphy,* 217 Mass. 233, 104 N. E. 466.

It is argued by appellee that if it be held that a husband who is carrying on a partnership business with community capital, as here, can dispose of his wife's interest therein to his partner in consideration of the partnership's paying until he dies the premiums on an insurance policy on his life, payable to his wife, and she collects the policy, that it would or might work a fraud upon such wife. There is not a scintilla of evidence that either Winchester or Coe in making the contract was actuated by other than the most noble motives. Nor can it be said that the contract was not most advantageous to appellee. She received $10,000 cash instead of one-half interest in a $19,800 business subject to immediate liquidation. It is true that many a husband has forgotten his marriage vows to support and protect his wife as long as they both shall live and neglected to provide for her, and even conspired to defraud her of her property, but not so with these husbands. We concur in Winchester's opinion of the arrangement wherein he says:

"I think this is an excellent proposition and think we should go on with it."

The appellee's conception of the force and effect of the contract, as expressed to the firm's stenographer in a letter shortly before her husband's death, is in accord with the construction we have given it. She wrote:

"Of course . . . if Bob should die (and we must face that probability) the business automatically reverts to Coe on payment of the partnership insurance."

Appellant further insists that appellee having accepted the benefits of the contract made by her husband as her agent is estopped now from denying his power to dispose of her community interest as he did.

It would be worth while to go into the question if there was any doubt of the power of the husband to bind her interest for the benefit of the partnership, or for her benefit; but as we have concluded that his agency over the community personalty authorized him to dispose of it as he did, it is not necessary to discuss the estoppel feature suggested.

The judgment is reversed and the cause remanded, with directions that judgment be entered for appellant.

LOCKWOOD and McALISTER, JJ., concur.