## More v. Carnes et al.

February 24, 1948.

Rehearing denied December 10, 1948.

Byron, Sandidge & Holbrook for appellant.

Hubert Meredith for appellees.

OPINION OF THE COURT BY JUDGE KNIGHT—Reversing.

The question to be decided here is one of first impression in Kentucky. It involves the validity of a Partnership Agreement which we set out in full as follows:

"This Agreement made and entered into this the 25th day of May, 1944, by and between George H. More, party of the first part, and Russell L. Carnes, party of the second part, both parties being of Owensboro, Kentucky.

"Witnesseth: That, whereas, the parties hereto are partners carrying on a storage battery and electrical business in Owensboro, Kentucky, under the firm name and style of 'Owensboro Storage Battery Co.,' which is located at 317 West Fourth Street, Owensboro, Kentucky, the parties hereto being equal partners in said business; and

"Whereas, the death of either of said partners would result in an immediate cash demand on the surviving partner, and each of said partners is desirous of the surviving partner acquiring and owning the entire partnership business;

"Now, therefore, in consideration of the premises, and of the sum of ONE DOLLAR, cash in hand paid by each of the parties to this agreement to the other party, and in order to accomplish said purpose, and in consideration of the covenants and agreements hereinafter set out, it is understood and agreed between the parties hereto as follows:

"1. That upon the death of one of the parties hereto who is the first to die, the survivor of them shall automatically become the owner of the interest in said partnership business owned by the party so dying at the time of his death, and complete title to all of the assets of said partnership, including the trade name, good will, and assets of every kind shall immediately become vested in the survivor. It is understood that the death of either partner shall immediately be considered as a complete dissolution and settlement of the partnership, and the surviving partner shall take over the business in its exact state at the time of the death of the deceased partner, it being understood that the surviving partner is to pay all of the debts of the partnership. It is understood that no appraisement of the partnership estate shall be required.

"2. In order to compensate the widow, or the estate of the deceased partner, for the deceased partner's interest in the partnership business, the partnership has taken out life insurance with The Mutual Life Insurance Co. of New York on the lives of the parties hereto as follows:

"Policy No. 5,681,460, dated February 20, 1941, for $5,000.00 and policy No. 5,913,229, dated May 6, 1944, for $5,000.00 on the life of George H. More in which policies Gladys M. More, wife of George H. More, if living, if not living then the children of George H. More, is made beneficiary.

"Policy No. 5,681,439, dated February 20, 1941, for $5,000.00 and policy No. 5,913,287 dated May 6, 1944, for $5,000.00 on the life of Russell L. Carnes, in which policies Dorothy D. Carnes, wife of Russell L. Carnes, if living, if not living then the children of Russell L. Carnes, is made beneficiary.

"It is understood that the premiums on said policies shall be paid by the partnership.

"It is understood and agreed that the payment of the proceeds of the policies on the life of the partner first to die to the beneficiary named, or that may hereafter be named, in said policies, shall constitute and be considered full and complete payment and satisfaction

for the interest of the deceased partner in said partnership business.

"3. If said partnership is terminated prior to the death of either of the parties hereto by agreement, by operation of law, or otherwise, then this agreement shall likewise terminate, and the insurance policies hereinabove enumerated shall be and belong to the respective parties.

"4. This agreement may be modified or changed or revoked at any time by the written consent of the parties hereto, but no change or modification thereof shall be considered as bonding unless reduced to writing and signed by both of the parties hereto.

"In testimony whereof, the parties hereto have executed this agreement in duplicate, this the day and year first hereinabove written.

"(s) Geo. H. More
"(s) Russell L. Carnes"

This Agreement was duly acknowledged by both parties.

### The Facts in the Case.

We take the following facts from the brief of appellant since the statement has been accepted in appellees' brief as a true and accurate statement of facts:

On and prior to May 25, 1944, and continuously thereafter to and including February 19, 1947, Russell L. Carnes, appellees' decedent, and George H. More, appellant, were sole and equal partners in a partnership business known as "Owensboro Storage Battery Company," Owensboro, Kentucky. The general nature of the business was that of sale, repair and maintenance of storage batteries and sale of electrical and automotive parts. Both partners were active in the business, Carnes attending principally to the books and administrative functions and More attending to sales. At the date of the Agreement, May 25, 1944, Carnes was 42 and More 41, and both were married. At no time did the partnership ever own any real estate. On May 25, 1944, the two partners, More and Carnes, mutually executed, acknowledged and delivered the Partnership Agreement above set out. At or prior to May 25, 1944,

the policies of insurance mentioned in the Partnership Agreement had been issued, to wit $10,000 on the life of More, the beneficiary being More's wife if living and if not, then to his children; a like amount of insurance on the life of Carnes, the beneficiary being his wife, Dorothy, if living, and if not, to his children. Premiums on these policies were from and after May 25, 1944, promptly paid out of partnership funds. All policies were in full force and effect at Carnes' death on February 19, 1947.

Subsequent to May 25, 1944, and prior to his death, Carnes, by a rider or amendment to the aforesaid policies issued on his life and by the payment of an additional premium, which he paid out of his own personal funds, arranged for the proceeds of said insurance to be paid, in the event of Carnes' death, on what is sometimes known as the family income plan. As a result of this arrangement, Carnes' widow, and at her death Carnes' children, would receive $100 per month from the date of Carnes' death to May 1954, and on the latter date the full principal amount of $10,000. In effect, Carnes, by this arrangement deferred payment of the principal amount of said policies, which were paid for out of partnership funds, to May 1954, by providing for monthly payments to his wife and at her death to his children for the period commencing with the date of his death and ending May 19, 1954. It was not discovered by either appellant or appellees that Carnes had effected the arrangement set forth in this literary paragraph until after the petition and amendment thereto and appellant's answer had been filed. However, it has no bearing on the questions to be decided in this case.

Carnes died intestate February 19, 1947, a resident of Owensboro, Kentucky, and left surviving him as his only heirs, his widow, Dorothy D. Carnes, and two sons, Charles N. Carnes and Thomas D. Carnes, ages 19 and 15 respectively. Dorothy D. Carnes thereafter qualified as administratrix of her deceased husband's estate. Appraisers appointed by the Daviess County Court to appraise Carnes' estate were advised by More of the existence of the Partnership Agreement and that he was claim ng title to all the partnership assets thereby. These appraisers made no further effort to appraise the partnership property.

On March 31, 1947, appellees filed a petition in equity in the Daviess Circuit Court against appellant seeking among other things a decree adjudging the Partnership Agreement to be void, ineffectual and unenforceable. To this petition as subsequently amended, appellees filed a general demurrer and without waiving the demurrer, filed their answer. The parties filed a stipulation of facts and the case was heard and submitted, and on June 23, 1947, a judgment was entered decreeing that the Partnership Agreement was void, ineffectual and unenforceable for any purpose whatsoever; that appellant acquired no interest in the decedent Carnes' undivided one-half interest of the partnership assets and that the appellees were the owners thereof. To all of which judgment the appellant objected and excepted and was granted an appeal to the Court of Appeals.

Subsequent to the date appellant's general demurrer to appellee's petition and amendment thereto was overruled, appraisers originally appointed by the Daviess County Court to appraise the estate of the decedent, Carnes, resigned and other appraisers were appointed by the same court who appraised the partnership assets as of February 19, 1947, the date of Carnes' death, at $46,129.56.

Carnes' widow, one of the appellees, after the Daviess Circuit Court overruled appellant's demurrer, filed proof of claim on the policies issued on her deceased husband's life, and described in the Partnership Agreement, and she is now receiving the benefits of such insurance.

### Points in Issue.

While the lower court did not give any reasons for its decision that the Partnership Agreement above set out is void and unenforceable, it is indicated in appellant's brief that the basis of the court's decision was that the Agreement is testamentary in nature and since it was not executed according to our statute of wills, it is void and unenforceable. That is the principal point argued and contended for in appellees' brief. Another point argued and contended for in appellees' brief is that the Agreement is not based upon or supported by any valid consideration and is, therefore, unenforceable. Appellant takes the opposite view on both contentions.

## Is the Agreement Testamentary?

This question as it relates to a Partnership Agreement has never been decided in Kentucky but the great weight of authority in other jurisdictions based upon what appears to us to be the better reason is that such Agreements are executory contracts which determine the rights of the parties inter se and are not testamentary in nature. In American Jurisprudence, Vol. 40, section 312, page 347, it is said with respect to such Agreements:

"A provision in a partnership agreement that on the death of one of the parties his interest in the partnership shall become the property of the other partners is not testamentary in nature and the fact that the agreement is not executed according to the requirements of the statute of wills does not invalidate it. It is enforceable if supported by sufficient consideration."

Cited as a footnote to the text in support of the above statement is the case of Hale v. Wilmarth, 274 Mass. 186, 174 N. E. 232, 73 A. L. R. 980. In that case it was held (quoting from the syllabus):

"A provision in a partnership agreement that on the death of one of the partners his interest in the partnership shall become the property of the other partners is not invalid as testamentary in nature and, therefore, inoperative because of failure to conform to the requirements of the statute of wills."

In that opinion it was said:

"The main contention of the plaintiff is that the words in the partnership agreement, to the effect that on the death of Mrs. Blackinton her interest in the partnership should become the property of the defendants, are testamentary in nature and therefore inoperative and void under the statute of wills. G. L. c. 191, sec. 1. In Murphy v. Murphy, 217 Mass. 233, 104 N. E. 466, it was held that partnership agreements providing for the disposition of the interest of partners in partnership property after the death of one or more of the parties are frequent; that when fairly made without intent to evade the statute of wills they are valid and open to no objection. There are sound reasons, as stated in the opinion at page 236 of 217 Mass., 104 N. E. 466, 467, 'why a fair agreement entered into by partners, as to the dis-

position of partnership property in the event of the death of one or more of the partners, should be sustained. The terms of such an agreement made by those most familiar with the real character and value of the property, are quite as likely to be just as an arrangement made after the decease.' The fact that in the Murphy Case the partnership was to continue for five years, and in the case before us no specific time, during the life of the parties, was fixed for its dissolution, is no ground for distinguishing the cases. Nor is it important that in the Murphy Case a valuation was placed on the interest of the deceased partner. Mrs. Blackinton could provide, if she so desired, that her interest should be sold to the surviving partners at a fixed price, or contract for the disposition of her interest on her death, as stated in the partnership agreement. Krell v. Codman, 154 Mass. 454, 28 N. E. 578, 14 L. R. A. 860, 26 Am. St. Rep. 260.''

In the case of Murphy v. Murphy, 217 Mass. 233, 104 N. E. 466, 467, cited in the above case, a written agreement was entered into between the plaintiff and his brother providing, among other things, that in the event of the death of the deceased before the end of the five year period the plaintiff would pay to the widow or legal representative of the deceased partner the sum of $3,000 and that thereupon he would become the sole owner of the partnership business. The plaintiff, surviving partner, brought a suit in equity to compel the defendant, as administratrix of the estate and widow of the deceased partner, to specifically perform the provisions of the Partnership Agreement. In granting the relief sought, the court said:

''Partnership agreements which provide for the conduct of the business after the death of one or more of the partners, and for the disposition of the interest of partners in the partnership in such event, are frequent * * * (and) when fairly made, without any illegal purpose and without the intent to evade the statute of wills, they are (valid and) not open to objection. Contracts respecting the disposition of one's property after death are not uncommon.''

In the case of Ireland v. Lester, 298 Mich. 154, 298 N. W. 488, 489, the partners, Lester and Ireland, entered

into an agreement which in substance provided that upon the death of either partner the interest of such decedent in the partnership business should be sold to and purchased by the survivor at a sum to be agreed upon by the parties from time to time. Thereupon they set a price at $50,000 and it had never been changed. It was further provided that the agreement could be altered, changed, amended or revoked, in whole or in part, by mutual agreement of the parties in writing. The contract was signed by the partners and their wives. Insurance was purchased with partnership funds to provide the money for the initial payment and the remainder was to be paid at the rate of $1,000 per year. Upon the death of one of the partners, the surviving partner was ready to carry out the terms of the contract, but a dispute arose between the deceased partner's widow and his daughters by a former marriage as to who was entitled to the proceeds. The daughters took the position that the contract was testamentary in character and invalid, and, therefore, the court could not reform the contract as the widow had sought. The lower court found the contract not testamentary and ordered it reformed. On appeal, the Supreme Court of Michigan said: "The only question, and in this both parties are in accord, is whether the contract is testamentary in effect. * * * The fact that the death of one of the parties is to determine the time of the performance does not of itself make the agreement testamentary. It is as proper to set death as a date for performance as any other time that could be stipulated."

Further the court said:

"A valid contract does not fall into the testamentary class simply because it is performable after the death of one of the parties, for to so hold would overlook the fact of the complete revocability that is a further characteristic of a will.

"The same is to be said of a deed that conveys no present interest or right and is to have no effect until the death of grantor.

"But the instrument in the instant case was operative from the day it was signed, and there came into existence contractual obligations and rights which the parties were entitled to have performed. There was a

present transfer of a chose in action, performance of which was set for a future date. It was not intended nor was it necessary to have a present transfer of the partnership interest. It is this element of present existing contractual rights that distinguishes this case from those where the instrument has been declared testamentary in character.

"In the absence of any showing that a contract of this nature was for the purpose of evading some statutory provision or to offend public policy, there is no reason why a person cannot as well use this method of disposing of his property as by will or deed."

In the case of McKinnon v. McKinnon, 8 Cir., 56 F. 409, an uncle and nephew had entered into articles of partnership for the practice of medicine by which it was agreed that, "in the event of the death of the senior member of the firm, all his property, personal and otherwise, which he held in partnership at the time of his death, should go to the junior partner." Held that this was not a testamentary disposition of the property and hence it was capable of enforcement in equity although not executed with the formality required in a will. In that case the court said:

"The partnership articles involved in the present controversy were neither intended as a deed or a will. They constitute an executory agreement, which determines the rights of the parties inter se, and provides what disposition shall be made of the partnership property on the happening of a certain event, * * *. We can conceive of no sufficient reason why an agreement contained in partnership articles, to the effect that, in a certain contingency, one of the partners shall succeed to all of the partnership assets, should not be held valid, and should not be specifically enforced in equity when the contingency happens * * *. Under such an arrangement between partners the one in whom the right of survivorship is thus vested, would hold all of the partnership assets, subject to the payment of the partnership debts, as he would in any event; and we are not aware of any considerations which should preclude the making or the enforcement of such an agreement."

In the case of Coe v. Winchester, 43 Ariz. 500, 33 P. 2d 286, there was a partnership agreement almost iden-

tical with that of the case at bar. In that case, as in the instant case, an insurance policy for $10,000 was taken out on the life of each partner, Coe and Winchester, and upon the death of either partner his wife, or heirs, was to receive the face of this policy and the surviving partner was to receive the deceased partner's interest in the business. Upon the death of Winchester, Coe refused to account to his widow for any of the partnership assets, contending that the proceeds of the insurance policy, the premiums of which had been paid out of the partnership assets, would be payment of her share in the partnership as provided in the contract. In the suit for accounting by the widow, it was contended that the contract was invalid because it was in the nature of a testamentary disposition. Both the trial court and the Supreme Court of Arizona overruled this contention, the Supreme Court citing as its authority McKinnon v. McKinnon, supra, and quoting therefrom the excerpt heretofore quoted in this opinion.

In the case of Autenreith v. Commissioner of Internal Revenue, 3 Cir., 115 F. 2d 856, the court refers to a partnership agreement of the type here involved as contractual and not testamentary in nature even though not effective until death.

In the New York case of In re Mildrum's Estate, 108 Misc. 114, 117 N. Y. S., 563, 564, a clause in a partnership agreement which provided that the partnership property should belong to and become the absolute property of the surviving partner, the court said:

"The clause provides that, upon the death of either, the survivor shall take the interest and property of the deceased in the business. Is this clause to be construed in the nature of a testamentary gift or in the nature of a contract? It appears to me that the clause in the partnership agreement is not a mutual will, but that the obligation of the survivor to carry out the terms rest on contract."

Another New York case is that of In re Karlinski's Estate, Sup., 1942, 38 N. Y. S. 2d 297, 299. In that case there was a partnership agreement which provided that "in the event of the death of the party of the first part (Al. B. Karlinski) prior to the termination of this partnership, the second party (Raymond Karlinski) shall be-

come the sole owner of the partnership.'' This was a suit by the administrator in which he claimed an interest in the assets of the partnership in spite of the partnership agreement. The court said:

"This brings before the court, in so far as the partnership is concerned, the question whether this agreement was an attempt to dispose of the interest of the deceased by an instrument, testamentary in character but not executed in accordance with the formalities required by the Decedent's Estate Law of the state of New York.''

Quoting from and relying on the cases of McKinnon v. McKinnon, supra, and Murphy v. Murphy, supra, the court upheld the contract and held that it was not testamentary in character. In support of its decision, it also cited the case of In re Mildrum's Estate, supra, and a number of other New York cases.

The only case from a foreign jurisdiction directly in point, which is contrary to the decisions of other jurisdictions referred to above, is that of Ferrara v. Russo, 40 R. I. 533, 102 A. 86, 87, L. R. A. 1918B, 905. That case involved an agreement between Ferrara and Russo whereby they were engaged in the printing business as partners and provided that in the event of the death of Ferrara, all the printing establishment was to become the property of Russo and in consideration thereof, Russo would pay to the heirs at law or family of Ferrara the sum of $275. This contract was held to be testamentary in character, the court saying:

"Did the parties make a valid and enforceable contract for the transfer to the defendant of what in his lifetime was Carmine Ferrara's share in the printing establishment? We think not. No present interest in Carmine's share of the business was by the agreement vested in the defendant. On the contrary it is plain that under it Carmine was to retain his interest in the establishment so long as he continued to live, as it is in effect alleged that he did. The agreement only provides and directs what was to be done after the death of Carmine. An agreement or instrument of this kind is held to be testamentary in character. The essence of such definition is that it is a disposition to take effect after

death and the form is not material, if its substance is testamentary."

It is our view that the reasoning in the Ferrara case is not sound and is clearly against the reasoning adopted by the majority of the courts in other jurisdictions as shown by the quotations from these cases set out above.

The only other case from a foreign jurisdiction cited in the brief of the attorney for the appellee is that of Gomez v. Higgins, 130 Ala. 493, 30 So. 417. The brief makes no analysis of that case but an examination of it in the reports shows very clearly that it is not in point and has no value as a precedent in the case at bar. An examination of that case will show the so-called partner-ship agreement between a father and son was clearly one of a testamentary character employing the language of wills and providing that the son, who had been taken in as a partner in a business already established by his father, would be entitled to the partnership assets for his life only and, upon his death, same was to be divided into three equal parts and given one-third to each of three daughters of the senior partner, father of all the parties. The partnership agreement had all the ear-marks of a will and no court could have held it to be other than testamentary.

In support of his contention that this partnership agreement is testamentary in nature, attorney for ap-pellees cites a number of Kentucky cases in which this court has held that a certain written instrument, usually a deed, was in reality a will or at least testamentary in nature and void unless executed with the formalities of a will. Such cases as Mason's Gdn. v. Soaper, 232 Ky. 525, 23 S. W. 2d 956; Glocksen v. Holmes, 299 Ky. 626, 186 S. W. 2d 634; Snyder v. Board of Education M. E. Church South, 205 Ky. 812, 266 S. W. 661; Elrod v. Schroader, 261 Ky. 491, 88 S. W. 2d 12; Douglas v. Snow, 304 Ky. 805, 202 S. W. 2d 629, are cited.

These cases are good law on the questions which they decide but they are not controlling in the case at bar. Here we have a contract that by no stretch of the imagination can be treated as a deed or will—for it is neither. It is, as was said in the leading federal case of McKinnon v. McKinnon, supra (56 F. 412), "(not) intended as a deed or a will. They constitute an execu-

tory agreement, which determines the rights of the parties inter se, and provides what disposition shall be made of the partnership property on the happening of a certain event."

In further support of his contention that the agreement under consideration is void, attorney for appellees cites and relies on the annotation in 11 A. L. R. 15 to 106. That annotation treats of the validity of deeds to take effect after death and clearly has no bearing on the type of agreement here involved. Likewise his citation of 16 Am. Jur., Sections 181 and 182, relates to deeds and in our opinion is not applicable.

After a careful examination of all the cases in which this phase of the case has been considered and construed, we are of the opinion that the Partnership Agreement here involved was not testamentary in nature and was not required to be executed in conformity with our statute on wills, and we so hold.

### Is There Valid Consideration?

In appellant's brief it is said that there was little or no argument on this phase of the case in the lower court. However, in his brief in this court attorney for the appellees vigorously argues that there is no valid consideration to support the Partnership Agreement and that there was no benefit to the promisor and no detriment to the promisee and, therefore, the contract must fail for want of a valid consideration. Since this is the first time this court has been called on to construe this type of Partnership Agreement, we will examine, as we did on the first phase of the case, what the courts in other jurisdictions have held.

In the leading federal case of McKinnon v. McKinnon, 8 Cir., 56 F. 409, at page 412, the court said:

"We think that it cannot be maintained that the agreement that the junior partner should succeed to all of the partnership property on the death of the senior member was a mere gratuitous promise, which rested upon no consideration, and for that reason was not enforceable. * * * The consideration which supports the agreement as a whole, consists of the mutual promises of the parties to become partners, and to conduct the

partnership business on terms mentioned in the partnership agreement.''

In the case of Coe v. Winchester, 43 Ariz. 500, 33 P. 2d 286, 288, which case was practically on all fours with the case at·bar, the Arizona Supreme Court said:

''The arrangement certainly was an admirable one and was made by the two partners to provide for their wives when they could no longer do so. The mutual promises of the partners and the performance of his promise by Coe and the happening of the event upon which he was to have the partnership business all concurred to make the contract binding not only as to the marital community interest but as to the partnership interest, if the contract so intended.''

In the Michigan case of Ireland v. Lester, 298 Mich. 154, 298 N. W. 488, 490, the court said:

''The contract was made for an adequate consideration, and the obvious purpose of the agreement was to enable the surviving partner to take over the business and not have to dissolve it. Similar cases have come up in other states and it has been decided in practically all of them that such agreements between partners, when made without any ulterior motives, are valid contracts.''

In the Connecticut case, Faggelle v. Marenna, 131 Conn. 277, 38 A. 2d 791, 792, in distinguishing this character of contract from a will or other contract of a testamentary nature insofar as the question of consideration is involved, the court said:

''A will is ordinarily without valuable consideration and lacks the element of present-existing contractual rights. Here the consideration for the agreement was the mutual promises to perform, a valuable consideration. The agreement created in the wife of each partner a present interest which was vested in right, though it might be defeated should her husband be living at the termination of the partnership and though enjoyment of it would be postponed in any event until his death.''

Also in the case of Casey v. Hurley, 112 Conn. 536, 152 A. 892, 894, the court said:

''An agreement between partners that, upon the death of one, the survivor shall be entitled to take the

interest of the other in the partnership assets at a price named in the agreement, or to be determined thereafter by some method specified therein, rests upon the consideration of the mutual promises of the partners, is enforceable, and relieves the surviving partner of the obligation to account.''

In construing other types of contract this court has consistently held that mutual promises form a valid consideration for the agreement but in order for that to be so there must be a benefit to the promisor or a detriment to the promisee. Robbins v. Robbins, 246 Ky. 411, 55 S. W. 2d 31.

Appellees contend that there was no benefit to the mutual promisors and no detriment to the mutual promisees in this Agreement and, therefore, it is unenforceable. With this we do not agree. This contract was executed during the late war when everything was out of adjustment. Nobody knew what conditions would be when the war was over. Suppose, instead of the booming, inflationary conditions which followed the late war and which, no doubt, were responsible for the high inventory value of the deceased partner's interest at the time of his death in 1947, there had been a slump and depression, as there was within two years of the close of World War I. Suppose, instead of an inventory larger than the insurance taken out, it had turned out to be less, would appellees have sought to void the contract? Or supposing that the firm had been in debt at the time of the death of the deceased partner, would not the appellees then have thrown themselves behind the protection of the contract and have resisted any attempt to have decedent's estate pay his part of the indebtedness. The answer is obvious.

It is a fundamental principle of partnership law that death works a dissolution of a partnership and every lawyer knows the chaotic conditions that usually result from the winding up of partnership affairs. Realizing this, no doubt, the partners entered into what appears on its face to be an admirable arrangement by the partners to settle their partnership affairs while they were still living. As a matter of good business practice the partners should have kept the amount of insurance carried more nearly in line with the inventory of the

business so that the insurance on the life of each would approximate the proportionate value of the inventory owned by each. It was as much, or more, the duty of the deceased Carnes, who, the stipulation shows, attended to the books and administrative functions of the business, to see that this was done as it was the duty of his partner, More. However, their failure to do this does not, it seems to us, affect the validity of the contract which both parties entered into with full knowledge of their partnership affairs.

We do not think it can be truly said that at the time the contract was entered into there was no possible benefit to the partners as mutual promisors and no possible detriment to them as mutual promisees. We think their mutual promises sufficient consideration to support this contract and we so hold.

### Equities of the Case.

It is true in the instant case that, as it turned out, an inequity resulted to the widow and children because the half interest of the deceased partner, appraised as of the date of his death, was more than twice the value of the insurance provided by the contract to pay for that half interest. This is a result to be regretted but is not a ground for voiding the contract if, as we have held herein, it is a binding, enforceable agreement. As said above, it could have been the other way; the firm could have been in debt when the deceased partner died and his estate could then have been called upon to make up the loss had there been no contract. Courts cannot deny enforcement of an otherwise valid contract merely because its enforcement would result in inequities in a particular case.

### Conclusion.

For the reasons herein indicated, the judgment of the lower court is reversed and the case is remanded for further proceedings consistent with this opinion.

Judgment reversed.