**CAVE CONSTRUCTION, INC., a corporation, Appellant,**

v.

**UNITED STATES of America, Suing herein for the Use and Benefit of ANGELL BROS, INC., a corporation, Appellee.**

No. 9259.

United States Court of Appeals
Tenth Circuit.

Dec. 11, 1967.

See also D.C., 250 F.Supp. 873.

James P. Horiskey Cheyenne, Wyo., and Leo Graybill, Jr., Great Falls, Mont. for appellant.

Cresap S. McCracken, Great Falls, Mont., and James C. Wilson, Cheyenne, Wyo., for appellee.

Before MURRAH, Chief Judge, and JONES* and HILL, Circuit Judges.

MURRAH, Chief Judge.

Defendant-Appellant Cave Construction, Inc., appeals from a Miller Act judgment in favor of its subcontractor, plaintiff-appellee Angell Bros., Inc., for sums due for the substantial performance of the subcontract.

The basic and undisputed facts are that Cave Construction contracted with the United States to furnish labor, materials and equipment and perform certain "dredging" and bulkheading in the Grant Village "Lagoon" and "Marina" areas, Yellowstone National Park. Included as a part of the contract was a "Rock Addendum" warning of existing rock conditions on the jobsites. Cave commenced its dredging operations at the Lagoon area using a rented, homemade dredge. After encountering considerable difficulty with the homemade dredge, it subcontracted the dredging work at both sites to Angell Bros. who at that time was purchasing a portable hydraulic dredge. By the terms of the subcontract, Angell agreed "to furnish all materials, labor, tools, equipment, services and supplies and to fully construct, perform and in every respect complete all work set forth in Section 2 hereof, in the construction of Marina Dredging and Bulkheading at Grant Village * * * in accordance with the terms and provisions of the contract between [the United States] and [Cave] .* * * including all the general and special conditions * * * and other documents and addenda thereto * * *." Section 2 provided for the cubic yardage and unit price for "Dredging—wet excavation" and the lump sum of $1,100 to be paid for moving Angell's equipment in and out of Yellowstone National Park. Angell was not, however, shown the Rock Addendum crucial to the prime contract.

Angell moved its hydraulic dredge onto the jobsite and completed the dredging at the Lagoon area without incident. It then commenced dredging the Marina area where it encountered rock formations "undredgable" with its hydraulic dredge. Under the provisions of the prime contract, a claim for allegedly "changed conditions" due to unanticipated rock formations was filed by Cave and subsequently denied by the Government. Angell removed its dredge from the jobsite and commenced work on an unrelated contract. It then brought this suit to recover for the work it had performed for Cave and the cost of moving its dredge.

It is, of course, indisputable that if Angell agreed to perform an integral part of the prime contract in accordance with its terms and provisions, no amount of unforeseen hardship will excuse its performance. See Steenberg Construction Co. v. Prepakt Concrete Co., 10 Cir., 381 F.2d 768. The primary issue here is whether Angell did so agree, or whether it agreed to do only such dredging as it could perform with its hydraulic dredge.

As an aid in interpreting the subcontract, Judge Kerr considered the conduct of the parties and the surrounding circumstances at the time of the agreement. On the basis of this evidence he concluded that Angell had no knowledge of the prime contract Rock Addendum and

* From the Fifth Circuit by special designation.

that the addendum was not a part of the subcontract; that Angell agreed to do only such dredging as it could perform with its portable hydraulic dredge and this did not contemplate removing hard rock formations; that Angell "substantially performed its subcontract with Cave and is entitled to recover * * * for the balance due it for material dredged at the contract price * * * for move-in costs * * *" and for other miscellaneous expenses.

On appeal Cave first contends that the subcontract is clear and unambiguous in its terms and provisions and that the trial judge, therefore, erroneously permitted extrinsic evidence to influence his interpretation. See Flora Construction Company v. Bridger Valley Electric Association, Inc., Wyo., 355 P.2d 884.

■■■ In the interpretation of contracts the primary function of the judge is to ascertain and effectuate the intention of the parties. See Socony Mobil Oil Company, Inc., a New York Corp., v. Humble Oil & Refining Company, a Delaware Corp. (substituted for Wasatch Development Company, a Colorado Corporation), 10 Cir., 1967, 387 F.2d 155. If, in the judgment of the court, the contract, when considered by the whole of its parts, clearly and unmistakably expresses the intention of the parties, extrinsic inquiry is unwarranted. See The Colorado Milling & Elevator Co., a Corp., v. Chicago, Rock Island & Pacific Railroad Co., a Corp., 10 Cir., 1967, 382 F.2d 834; and see Homestake-Sapin Partners v. United States, 10 Cir., 375 F.2d 507. But, contracts are not made in a vacuum, nor with an eye to the dictionary. Rather, the parties usually contract in the environment in which they are brought together and the words they use to express their intentions are of the vernacular and nomenclature of their marketplace. Evidence of the surrounding circumstances and the conduct of the parties thus becomes relevant in the ascertainment of the intention of the parties when their minds met. See Evensen v. Pubco Petroleum Corporation, 10 Cir., 274 F.2d 866; DeTar Distributing Company, Inc., et al., v. Tri-State Motor Transit Company, 10 Cir., 379 F.2d 244.

In our case Judge Kerr was concerned with whether the term "dredging" means, as Cave contends, "all dredging" or, as Angell contends, "hydraulic dredging". Without objection he proceeded to hear evidence from both parties concerning the surrounding circumstances and conduct of the parties to the following effect: Having used approximately one-third of its prime contract time, Cave spent most of the winter locating a hydraulic dredge to have on the job when work reopened in the Spring. Angell's name was obtained from the manufacturer of the dredge Angell was purchasing, and the parties began negotiations for the subcontract. During the negotiations, Cave failed to disclose the Rock Addendum annexed as a part of the prime contract, but it provided Angell with samples of the materials to be removed from the Lagoon and Marina areas—all of which were determined to be removable with a hydraulic dredge. Prior to execution of the subcontract, Angell visited the jobsite and attempted to examine the area, but access was limited by snow and wintery weather. Cave thereafter drafted the subcontract and Angell executed it. Angell then had its hydraulic dredge shipped by the manufacturer directly to the jobsite and performed its dredging operations until the dredge "had reached its limit of operation" due to the rock formations. Angell's Vice President was called to the jobsite where he prepared a letter to Cave and the Government requesting a "change in conditions" allowance. A copy of this letter was delivered by hand to Cave on the job, but the Government officer refused to accept a copy on the ground that "he had nothing to do with the subcontractor." A discussion thereupon developed among Angell, Cave and the Government, during which the Government, relying upon the prime contract Rock Addendum, took the position that there were no "changed conditions". Angell was then, for the first time, shown a copy of the "Rock Addendum". There-

after, according to the provisions of the prime contract, Cave filed a claim with the Government for "changed conditions" wherein it stated that according to the federal specifications for the prime contract work, "The required principal equipment shall consist of a portable hydraulic dredge * * * "; that due to the changed conditions, i. e. unanticipated rock formations, the "Hydraulic dredge equipment is uncapable of handling material of this nature"; and that "these [federal specification] paragraphs which constitute the essence of the provisions on dredging—wet excavation limit the Contractor's equipment to that associated with hydraulic dredging."

From this and other credible evidence, Judge Kerr found that "Both Cave and Angell are general contractors with full lines of equipment and the only machinery Angell had in which Cave was interested was the portable hydraulic dredge being purchased by Angell"; that Cave officials presented Angell with samples of the area to be dredged consisting of layers of "precipitate geyserite stone of layered construction, delicate and easily crushed to powder"; that Angell sent these samples to the manufacturer of its hydraulic dredge who confirmed that its machinery would handle the material; that Angell also "made a reasonable examination of the site conditions" under existing weather; that "Cave prepared a memo of the negotiations showing that the parties were dealing with relationship to the Angell dredge and the work it might do"; and that the first time the Rock Addendum to the prime contract was displayed to Angell was after the Government had refused the claim for "changed condition adjustments in the contract price". The judge also found that the subcontract requires Angell to "provide labor, equipment and services necessary to completely perform the dredging operation at the two sites", but he concluded that the duty imposed by the subcontract was to do only that dredging which Angell's hydraulic dredge was capable

of performing; that "The responsibility to the United States under the terms of the contract to remove all material from the Marina lies with Cave, who had due notice of the rock referred to in [the Rock Addendum] to the contract". We think the evidence overwhelmingly supports the findings of the court and fully justifies its conclusions.

Lastly, Cave contends that the trial court should have given it credit, i. e. a set-off, for the dredging it performed in the Lagoon area and for certain expenses it paid in Angell's behalf. During the trial, Cave introduced testimony to the effect that it had dredged some 4,000 cubic yards from the Lagoon area for which it had been paid by the Government. It also introduced Exhibit J reflecting that it had paid $852.50 of the $1,100 contract price for moving Angell's dredge from the railroad destination to the jobsite and that it had paid an additional $2,211.80 in Angell's behalf for renting and moving trailers in and out of the jobsite and hooking water to them, for renting and operating a shovel, and for certain supplies. Receipts for these expenditures were apparently attached to the Exhibit. Judge Kerr found that Cave's evidence was insufficient to support its claim for dredging in the Lagoon, and, without mentioning the Exhibit, concluded that Angell was entitled to recover the entire contract price of $1,100 for moving its equipment.

We will not disturb the court's finding with respect to the sufficiency of the evidence to support Cave's dredging claim. See High Voltage Engineering Corp. v. Pierce, 10 Cir., 359 F.2d 33. But, a search of the record discloses no reason for the trial judge's apparent disregard for the Exhibit and receipts accepted into evidence. The only proof we can find in the record, i. e. Exhibit J, indicates that Cave paid $852.50 for moving Angell's equipment, and the agreement to pay a total of $1,100 for moving expenses had been fulfilled to that extent. As to the other amounts expended by Cave allegedly in Angell's behalf, we

can find nothing in the record to indicate whether Angell would have been liable for such sums had Cave not paid them. As to that, we leave the matter open for final determination on remand. In all other respects the judgment is affirmed.