UNITED STATES of America, for the Use and Benefit of CLARK ENGINEERING COMPANY, a Utah Corporation, Plaintiff-Appellant,

v.

FREETO CONSTRUCTION COMPANY, INC., a corporation, and Western Casualty and Surety Company, a corporation, Defendants-Appellees.

No. 75–1747.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Aug. 23, 1976.

Decided Jan. 7, 1977.

S. Rex Lewis, Provo, Utah (Howard, Lewis & Petersen, Provo, Utah, on the brief), for plaintiff-appellant.

Garry W. Lassman, Pittsburg, Kan. (Wilbert, Lassman, Toburen & Wachter, Pittsburg, Kan., on the brief), for defendants-appellees.

Before HILL, SETH and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

This is an action brought under the Miller Act by the use plaintiff, Clark Engineering Company, against Freeto Construction Co. and its surety for the sum of $13,992.65 due Clark Engineering for the furnishing of certain fabricated materials and performance of certain labor pursuant to a subcontract with Freeto, the prime contractor. 40 U.S.C. § 270f. By answer Freeto admitted owing Clark $13,992.65 under the subcontract. In its answer Freeto also asserted a counterclaim based on Clark's alleged failure to timely perform under the subcontract and sought judgment in the amount of $55,160.

Trial was to the court, sitting without a jury, with the trial court entering judgment in favor of Freeto on its counterclaim in the amount of $33,840. This judgment was then reduced by the sum admittedly due Clark under the subcontract, namely, $13,-

992.65, thereby reducing Freeto's recovery to $19,847.35. Clark now appeals the judgment thus entered.

On February 22, 1971, Freeto entered into a contract with the Corps of Engineers to construct a low level outlet facility at Broken Bow Dam in Oklahoma, which included excavation and installation of four hydraulic slide gates. The dam itself had been completed several years earlier and the low level outlet facility was a type of emergency bypass tunnel.

Freeto subcontracted with Clark on April 1, 1971. This subcontract called for Clark to furnish the hydraulically operated slide gates, including the preparation of all necessary shop drawings, assembly, and testing. The total contract price was approximately $160,000.

Freeto's contract with the Corps of Engineers required that the job be completed in 460 days. The notice to Freeto to proceed was issued on March 15, 1971, thus creating an original completion date of June 17, 1972. This was later by agreement extended to September 2, 1972, for reasons having nothing to do with the present controversy. Freeto did not complete the job until May 12, 1973, thus creating an overrun of 252 days. Because of this failure to meet the completion date, the Corps of Engineers assessed as liquidated damages against Freeto the sum of $20,160, which covered the 252-day overrun at the rate of $80 per day.

Prior to entering into a subcontract with Clark and prior to the issuance of a purchase order on April 1, 1971, Freeto made a trip to Clark's plant in Utah to look over the plant and to initiate discussion with Clark concerning the latter's willingness, and ability, to manufacture and install the hydraulic gates. At that time Clark was made aware of the delivery schedule and its critical importance, and Clark assured Freeto that it could meet that schedule and could produce the gates within six months after approval of the shop drawings.

Following the meeting in Utah at the Clark plant, Clark confirmed the discussion in a letter dated March 24, 1971, indicating that it could furnish the items required for the project "as discussed previously in person and by telephone." Based upon the proposal set out by Clark in its letter of March 24, 1971, and based upon the assurances previously given, a purchase order, or subcontract, was issued Clark on April 1, 1971. The subcontract provided that Clark would supply the materials "in strict accordance with the contract plans and specifications," and specifically provided at the bottom of the purchase order as follows: "Note: Early approval of this material is essential."

The first obligation to be performed by Clark under the subcontract was to prepare and deliver certain shop drawings, which were not furnished until June 1, 1971, and which were thereafter approved by the Corps of Engineers on June 23, 1971. Based on Clark's earlier promise that the gates could, and would, be produced within six months after approval of the shop drawings, the gates were due December 23, 1971. However, the gates were not delivered until nearly a year later during the latter part of December 1972. The excuse given by Clark was its inability to place orders for some 14-foot Monel metal shafts which were an essential part of the hydraulic gate system. The president of Freeto remonstrated with Clark over the delay with about "two hundred calls asking for delivery." The gates were finally delivered in December 1972, and Freeto completed the job within a reasonable time thereafter, though some 282 days beyond the completion date insisted upon by the Corps of Engineers.

We regard Clark's position in this Court to be basically a challenge to the sufficiency of the evidence to support the findings of the trial court. We find no real dispute between the parties concerning the controlling legal principles. And though Clark argues that Utah law should apply, it would appear that this case may be resolved under the general rules of contract law.

Clark argues that its performance under the subcontract was timely and without delay; that if there were delay, such

was excused by Clark's inability to obtain the Monel metal shafts; if there were unexcused delay, Freeto waived such delay; and finally, that if there were unexcused delay which was not waived, such was not the proximate cause of any resulting damage to Freeto. The trial judge in detailed findings held against Clark on each of these alternative positions, and our study of the record leads us to conclude that there is substantial evidence to support his findings. In such circumstance the findings, and the judgment entered thereon, should on appeal be upheld. Fed.R.Civ.P. 52(a).

■ Although the evidence was in some degree of conflict, the state of the record is nonetheless such as to amply support the trial court's finding that there was a failure on the part of Clark to timely perform under the subcontract, which failure to perform was not legally excusable; that Freeto had not waived the breach of contract; and that there was resultant damage to Freeto. To us there is little doubt that Clark did not perform in timely fashion. Indeed Clark in a sense concedes such to be the case by attempting to show that the delay was excusable. The excuse relied on is the alleged difficulty Clark experienced in finding someone who would make the 14-foot Monel metal shafts which were to be incorporated into the hydraulic slide gates. It is true that Marion Clark, president of Clark Engineering Company, testified as to the problems he encountered in getting someone to produce these metal shafts. However, there was other testimony to the effect that the delay was of Clark's own making. A key witness in the case was Raymond Tomasko, the resident engineer from the Corps of Engineers, who was in charge of the overall dam project. Though perhaps not a completely disinterested witness, there is nothing to indicate that he had any such self interest as did, for example, Marion Clark, the president of Clark Engineering Company, or Merrott

Caldwell, the owner of Freeto Construction Company.

■ Tomasko, the resident engineer, testified that there was delay in furnishing the hydraulic gates, and that the cause of this delay lay with Clark, and was not the result of unforeseen conditions beyond its control. His testimony was that Clark was not diligent in several different areas and he specifically identified four: (1) Clark was not diligent in preparing the shop drawings; (2) Clark was not diligent in issuing purchase orders to their suppliers of the Monel shafts; (3) after an order for the Monel shafts was finally placed with the Rio Grande Metals in Albuquerque, New Mexico, Clark was not diligent in "riding herd" on that company to make certain that it made a prompt delivery of the shafts,[1] and (4) once Clark got the shafts, it was not diligent in fabricating the gates, apparently preferring to take care of other business. All in all, the evidence did show a breach of the subcontract by Clark, i. e., untimely performance which was not legally excusable because of any unforeseen act. *Cave Construction Co., Inc. v. United States,* 387 F.2d 760 (10th Cir. 1967) and *Beardon v. Smith,* 274 P.2d 1015 (Okl.1954).

■ As mentioned, Freeto protested the delay in delivery of the gates with, among other things, some 200 phone calls pleading for prompt delivery. There is no merit to the suggestion by counsel that by the mere act of accepting late delivery Freeto waived the breach. And the record fails to disclose that Freeto by its conduct otherwise waived the breach. *Oklahoma State Fair Exposition v. Lippert Bros., Inc.,* 243 F.2d 290 (10th Cir. 1957) and *Robberson Steel Co. v. Harrell,* 177 F.2d 12 (10th Cir. 1949).

■ The final question is whether Freeto sustained any damages as the result of Clark's breach of the subcontract. It is undisputed that the Corps of Engineers withheld the sum of $20,160 from the monies otherwise due Freeto under the prime contract because of the 252-day overrun

1. Rio Grande Metals never did make delivery of the shafts which were later produced by Pacific Metals in Los Angeles, California.

which the trial court found was due solely to Clark's untimely performance under the subcontract. That was a very real out-of-pocket loss.

 The trial court allowed Freeto the additional sum of $13,680 on its counterclaim, such sum representing the wages paid the construction superintendent and one laborer who because of the delay were required to stay on the project for an additional 36 weeks. The salary of the superintendent was $200 per week, and the laborer was paid $180 per week. 36 times 200 plus 36 times 180 equals $13,680, the sum awarded Freeto on its counterclaim in addition to the penalty which it incurred for not completing the job on the date required under the prime contract. These additional items of damage stemmed directly from the failure of Clark to timely perform under the subcontract, and were properly allowed by the trial court.

The trial court did not allow an additional claim made by Freeto in connection with certain machinery and equipment that was required to be kept at the dam site for an additional 36 weeks because of Clark's breach of the subcontract, with the machinery and equipment apparently standing idle for much of that time. In this regard the trial court found there was no evidence to show whether Freeto could have rented the items of machinery during that 36-week period of delay. It was on this basis that the trial court rejected, and properly so, Freeto's further claim for $18,000.

Judgment affirmed.