[Civil No. 4590. Filed March 6, 1945.]

[156 Pac. (2d) 898.]

SAM BRANKER, Appellant, v. WIRT G. BOWMAN and V. D. BROWN, as Individuals and as Co-partners Doing Business Under the Firm Name and Style of "BOWMAN and BROWN," Appellees.

Mr. Earl Platt and Mr. Guy Axline, for Appellant.

Mr. M. V. Gibbons, and Mr. James V. Robins, for Appellees.

LaPRADE, J.—Sam Branker, appellant, instituted his action in the court below against Wirt G. Bowman and V. D. Brown as individuals and as copartners doing business under the firm name and style of "Bowman & Brown," seeking to recover damages in the sum of $2,600, itemized as $2,250 loss of profit and $350 to cover original deposit. He alleged breach of contract on the part of the defendants to deliver certain cattle purchased by plaintiff from defendants under written contract dated October 6, 1941. The contract in part reads as follows:

"Contracted from Bowman & Brown approximately 80 cows and calves at $80.00 a pair, at 10% cut at $70.00 and approximately 70 dry cows at $50.00 at 10% cut at $40.00. Deposit of $350.00. Cattle to be received anywhere from Nov 1 to Nov 15.

Bowman & Brown
V. D. Brown."

Plaintiff further alleged that the cattle were to be delivered at the stockyards at Chambers, Apache County, Arizona; that on November 11, 1941, he advised defendant Brown that he would receive the cattle on November 15th as contracted; that the defendants failed and refused to deliver the cattle on November 15th; and that they had in fact on or about the 10th day of November shipped the cattle by railroad to Maricopa County, Arizona.

The defendant Wirt G. Bowman answered separately. His verified answer denied that he was or ever had been a copartner of defendant V. D. Brown.

Brown denied any partnership with Wirt G. Bowman, and alleged that he was a copartner of one Teresa V. Bowman, wife of the defendant Wirt G. Bowman; admitted that he entered into the foregoing contract with plaintiff on behalf of himself and Teresa V. Bowman; admitted that he had received the $350 deposit mentioned in the contract; denied that they had re-

fused to perform the contract; alleged that they were ready and willing to perform and attempted to perform on the 10th day of November, 1941; and, that the plaintiff failed and refused to receive the cattle on said date. In addition to the answer, the partnership of Brown and Teresa V. Bowman cross-complained against the plaintiff, alleging that they delivered the cattle to the stockyards on November 8th, notified plaintiff of their presence, and held the cattle until the 10th day of November when the train left; that they shipped them to Maricopa County for the reason that they were no longer able to hold the cattle; and, that plaintiff had neglected to appear and receive them and pay for them. They prayed for damages in the sum of $1,595 on account of freight charges and loss sustained on resale.

The case went to trial before the court without a jury. At the conclusion of the case on motion the action was dismissed as to Wirt G. Bowman, individually. The court further ordered that the plaintiff take nothing on his complaint; and, that the defendant cross-complainants take nothng.

On August 8, 1942, a formal written judgment was filed, conforming with the court's order for judgment at the conclusion of the trial. In due time motion for a new trial was filed and denied. Plaintiff thereafter regularly perfected his appeal in this court, assigning as error that the judgment "is contrary to and against the weight of evidence . . . and contrary to the law." In support of his assignments of error, appellant set forth the following proposition of law:

"Where a contract provides that chattels may be received anywhere from a fixed date to a fixed date the option to fix the date at which the property is to be received is in the party who is to receive the same."

In support of this proposition, appellant cites Sections 1–102 and 52–542, Arizona Code Annotated 1939. These sections read as follows:

"1–102. *Computation of time.*—The time in which an act is required to be done shall be computed by excluding the first day and including the last day, unless the last day is a holiday, and then it is also excluded."

"52–542. *Duties of seller and buyer.*—The seller shall deliver the goods, and the buyer shall accept and pay for them, in accordance with the terms of the contract to sell or sale.

"Unless otherwise agreed, delivery of the goods and payment of the price are concurrent conditions, that is, the seller must be ready and willing to give possession of the goods to the buyer in exchange for the price, and the buyer must be ready and willing to pay the price in exchange for possession of the goods."

Appellant's argument supporting the code sections just quoted is briefly set forth in his opening brief in the following language:

"It must be remembered that the contract in question required the purchaser to receive the cattle between certain dates. This required an affirmative act on the part of the purchaser, which included the receiving of the cattle *and the payment of the balance of the purchase price.* The purchaser under the terms of the contract had until the last day in which to receive the cattle and to make the payment. It was therefore the duty of the seller to have the cattle available for delivery until the last day and hour, and for a reasonable time thereafter if time was not of the essence of the agreement."

It is the appellee's contention that the following stated rule is the proper one to apply for the construction of the contract before us: "Where a contract provides for delivery within a certain time, or before a certain date, the party by whom the first act in performance of the contract must be done has the choice of the date or dates of performance, provided such date is within the period permitted by the contract; and in making such choice as to date of performance, such party may consult his own convenience." Citing *Harman* v. *Washington Fuel Co.*, 228 Ill. 298, 81 N. E.

1017; *Rosenau* v. *Lansing*, 113 Or. 638, 232 Pac. 648, 234 Pac. 270; *Hunt* v. *Stimson*, 6 Cir., 23 Fed. (2d) 447; *Duncan et al.* v. *Allen et al.*, 214 Ala. 551, 108 So. 357; *In re Malko Milling & Lighting Co.*, D. C., 32 Fed. (2d) 825; and *C. W. Ferguson Sawmill Co. et al.* v. *Rhynes et al.*, 127 Ark. 617, 191 S. W. 920.

Appellant in his reply brief admits that the proposition of law submitted by the appellees is a correct statement of the law. The question is how to apply it to the facts in this case. Appellant claims the first move was up to him; that is, to order or indicate the date that he desired to have the cattle delivered. Appellees contend the first move was up to them; that is, to gather and deliver the cattle on any day between the first and last day named in the contract.

 Upon the general subject of interpretation and effect of contracts, certain general rules have been repeatedly enunciated by the courts of last resort. No rule is better established than that in the interpretation of an agreement the surrounding circumstances at the time it was made should be considered for the purpose of ascertaining its meaning. 12 Am. Jur., Contracts, Sec. 247; *Coe* v. *Winchester*, 43 Ariz. 500, 33 Pac. (2d) 286. We quote from the text in section 247, Am. Jur., *supra:*

" . . . In interpreting an agreement, a court should, to the best of its ability, place itself in the situation occupied by the parties when the agreement was made and avail itself of the same light which the parties possessed when the agreement was made so as to judge of the meaning of the words and the correct application of the language to the things described. . . . It is said that the circumstances in which the parties to a contract are placed may generally be considered when they will throw light upon the problems to be solved. . . . "

With this general rule of interpretation before us, we shall briefly consider the circumstances surrounding the parties in the instant case. It appears from

the evidence that the appellees were engaged in the cattle business in Apache County and operated a cattle ranch consisting of about 5½ townships, being approximately 18 miles in length. Appellee maintained what is known as a "holding pasture," where cattle were held pending shipment. This pasture is located about 16 miles from the shipping pens on the railroad. Brown testified that on October 27th he personally told Branker that he had the cattle gathered and that he would hold them for him until November 5th. Brown ordered the railroad cars in which to ship the cattle on November 5th, but Branker failed to appear, so Brown cancelled the order for the cars. Brown further testified that Branker came to the ranch on November 6th and told him to get a date with the railroad; to order the cars and let Branker know when the shipment would be made (these statements were emphatically denied by appellant); that he contacted the railroad agent at Chambers on November 7th and placed his order for the cars so the cattle could be shipped on November 10th; that he then wired Branker that the cattle would be shipped on November 10th, and sent two men as messengers to (and who did) advise Branker that the cattle would be shipped on November 10th. It also appears from the testimony that if the cattle had not been shipped on November 10th, it would have been necessary to turn them into the large pasture for feed, and that it would have required thirty days to re-gather them.

In view of the judgment of the lower court, it is apparent that the trial court accepted as true the testimony of defendant Brown. Hence, Brown's recitation of the evidentiary events are the facts on appeal. *Molina* v. *Bennett,* 37 Ariz. 70, 289 Pac. 512.

The evidence further discloses that appellant was a cattle buyer with years of experience. He was perfectly aware of the difficulties entailed in

gathering cattle on the range—such as rounding them up, "cutting," holding, and driving them to the railroad. Storms are not to be unexpected which, if encountered, would certainly interfere with the gathering and delivering of the cattle. The buyer and seller well knew that the seller could not in the usual course of his business deliver the cattle on a day and hour certain. We believe that the contract in stating "the cattle to be received anywhere from Nov 1 to Nov 15" recognized this performance uncertainty inherent in the seller's business. We conclude that the seller could have complied with the terms of the contract by delivery at any time between November 1st to November 15th, and that the buyer contracted to receive the cattle any time they were delivered between the dates fixed. In all events, the appellant did select a date for the delivery of the cattle; to-wit, November 10th. Appellee, at the special instance and request of the appellant, ordered the cars and made the shipping arrangements, delivered the cattle, and loaded them on the cars. Upon this event, time became of the essence of the contract. Appellant then and there breached the contract by his failure to appear, receive the cattle, and pay for the same. The deposit of $350 made by appellant at the time of the execution of the contract was alleged and admitted to have been made as a forfeit.

"The law permits a man to make a contract which will result in a forfeiture; and when it is clear from the terms of the contract that the parties have so agreed, a court of law, as well as a court of equity, will enforce the forfeiture. . . . " 12 Am. Jur. Contracts, sec. 435.

For the foregoing reasons the judgment is affirmed.

STANFORD, C. J., and MORGAN, J., concur.