368 P.2d 458

Arthur GERBER, and Allan Gerber, co-partners doing business as Arthur Gerber and Company, Appellants,

v.

William J. COOK, Jr., doing business as Cook Produce Company, and Jack T. Helm, Appellees.

No. 6743.

Supreme Court of Arizona.

En Banc.

Jan. 24, 1962.

Snell & Wilmer, Phoenix, for appellants.

McKesson, Renaud & Cook, Phoenix, for appellees.

LOCKWOOD, Justice.

Plaintiffs Arthur Gerber and Allan Gerber d. b. a. Arthur Gerber and Company, produce brokers, appeal from a declaratory judgment construing a crop financing agreement in favor of defendants William J.

Cook, Jr., d. b. a. Cook Produce Company, and Jack T. Helm, growers of produce.

Plaintiffs and defendants, entered into a contract dated July 9, 1951. Plaintiffs were to finance a part of defendant's operation, and in consideration plaintiffs were to have the exclusive right to sell all the crops on commission. On August 31, 1953 the parties executed a supplement to the contract providing in part as follows:

"II. 2 c. When the *advances made by GERBER in any particular growing season* are at least $25,000.00 and *not more than $29,999.00*, GERBER shall be entitled to receive, in addition to the above mentioned brokerage rates, 25% of the net profit of the crop deal and *shall be liable for one-third of the loss thereof.*

"d. When the *advances made by GERBER in any particular growing season exceed $30,000.00*, GERBER shall be entitled to receive, in addition to the above-mentioned brokerage rates, one-third of the net profit of the crop deal, but *shall under no circumstances participate in or be liable* for any loss.

"3 For the purpose of determining the measure of GERBER'S participation in net profit and loss, if any, as set forth above, the amount of the advance for the particular growing season shall be the largest amount of advances which was outstanding at any time be-

tween the commencement of planting and the commencement of harvesting in the particular growing season. For the purpose of this contract and to clearly divide and separate each crop deal, there shall be three growing seasons per year, * * *.

* * * * * *

"4 The crops grown, harvested and sold in each of said growing seasons shall be handled separately, and the parties shall account with each other at the end of each growing season independently of any other growing season, and GERBER shall be immediately reimbursed for all advances made during the growing season so ended, shall be immediately paid their share of the net profits, if any, and shall in turn immediately pay their proportionate share of the loss, if any, in such instances where GERBER is to participate in the loss as above defined." (Emphasis added.)

It was acknowledged in the contract that the "spring lettuce deal" planting normally commenced about the early part of December, harvesting and shipping running through the latter part of April or early May, and that "the cantaloupe deal" generally commenced planting about the middle of March, harvesting and shipping running from about the last of June through the last of July. Defendants commenced planting their 1955 cantaloupe crop March 25th, harvesting beginning June 26th.

After the shipping of the spring lettuce crop in May, 1955, plaintiffs sent defendants a check for $2,641.25, as their share of a profit which was made. The cantaloupe crop was sold at a loss. The highest amount of money advanced by plaintiffs between March 25th and June 26th was in excess of $30,000, but part of it was used by defendants in harvesting the overlapping spring lettuce crop. Thus less than $30,000 was advanced for planting and harvesting the cantaloupe crop. Defendants contended plaintiffs should share in the loss under paragraph 2 c. supra which the latter denied, claiming paragraph 2 d. was applicable. In settling accounts, defendants offset $8,525.10 (which it was agreed was one-third the loss on the cantaloupe crop) against certain debts owed to plaintiffs. Plaintiffs' declaratory judgment suit followed.

The trial was to the court without a jury. The trial court held that the supplemental contract was ambiguous on its face on the question involved, and permitted parol evidence to explain the meaning which the parties intended to give to it. Judgment was rendered for defendants, on the basis that:

"The word 'advances' found in the first sentence of Paragraph 3 of the supplemental contract dated August 31,

1953 was only to include advances made on or for the crop for which plaintiffs' participation, if any, in net profit or loss was to be determined."

Plaintiffs' appeal is based on the proposition that the contract was clear and unambiguous on its face, and that the trial court (1) improperly admitted parol evidence to explain its meaning, and (2) improperly construed it. We are of the opinion the trial court did not err in this respect. The contract was ambiguous in that it shows a definite intent by the parties to keep the crop "deals" separate, but does not state explicitly whether for purposes of determining participation in profit or loss under paragraph 2, advances "which were outstanding" during the overlapping period of growing and harvesting of separate crops were to be separated. Hence parol evidence was properly admitted.[1] There was sufficient evidence, although conflicting, to sustain the trial court's findings and we will therefore not disturb them.[2]

Judgment affirmed.

UDALL, V. C. J., STRUCKMEYER and JENNINGS, JJ., and R. C. STANFORD, Jr., Superior Court Judge, concurring.

Note: BERNSTEIN, C. J., having disqualified himself, the Honorable R. C. STANFORD, Jr., Judge of the Superior Court of Maricopa County, Arizona, was called to sit in his stead and participate in the determination of this appeal.

---

1. "In determining the construction placed upon an ambiguous contract, the construction placed upon it by the parties, whether evidenced by some acts or circumstances contemporaneous with the execution of the contract, or by subsequent acts or circumstances, or formal expressions, is entitled to consideration in resolving the ambiguity." Crone v. Amado, 69 Ariz. 389, 397, 214 P.2d 518, 523, (1950); Quoting Powers v. World's Fair Mining Co., 10 Ariz. 5, 8, 86 P. 15, 17 (1906).

2. Rossi v. Stewart, 90 Ariz. 207, 367 P.2d 242 (1961); Bonine v. Bonine, 90 Ariz. 664, 367 P.2d 664 (1961).