**Mary MAUCH, Appellant (Plaintiff below),**

**v.**

**Joan BALLOU, and Joan Ballou, Executrix of the Estate of Rex D. Maurer, Appellees (Defendants below).**

**No. 4060.**

Supreme Court of Wyoming.

July 12, 1972.

Rehearing Denied Aug. 14, 1972.

**592**

Bruce P. Badley, Sheridan, and Bert T. Ahlstrom, Jr., Laramie, for appellant.

Cecil K. Hughes, of Reynolds & Hughes, Sundance, for appellees.

Before McINTYRE, C. J., and PARKER and McEWAN, JJ.

McINTYRE, Chief Justice.

By quitclaim deed Rex D. Maurer conveyed all of his right, title and interest in certain described bentonite placer mining claims to his sister Mary Mauch. The deed contained this paragraph, the proper interpretation of which is the subject of the present appeal:

> "Excepting and reserving however, unto the Grantor, Nine-tenths, (90%) of my proportionate share of all Mineral Royalties accruing to the benefit of my proportionate share of any or all, as the case may be, of the above described premises."

The grantee, Mary Mauch, initiated an action in the district court of Crook County asking for a declaratory judgment adjudicating the effect of the deed. Being dissatisfied with the judgment of the district court, Mrs. Mauch has appealed.

### The Reservation

Appellant asserts on appeal that it is self-evident from "the four corners of the quitclaim deed" that the grantor intended to reserve a royalty interest which could only be in the nature of or akin to a "nonparticipating" royalty interest. Appellant reasons that, if the interest reserved is a "nonparticipating" royalty interest, then the grantor had no right to participate in rentals and bonuses or returns from leasing; that the reservation was unto the grantor exclusively; and that the reservation became void and expired when the grantor died September 2, 1968.

The single case relied on by Mrs. Mauch to sustain her principal contention is Bostic v. Bostic, 199 Va. 348, 99 S.E.2d 591, 66 A.L.R.2d 971. We fail to see where the facts in that case are comparable to those in the case we are dealing with. There, the grantor conveyed a life estate to his wife and the remainder in fee simple to their son. He reserved unto himself:

> " * * * the right to mine and sell coal and other minerals underlying said tracts of land, as well as the right to cut, sell, manufacture or otherwise dispose of timbers on said premises."

The court in the *Bostic* case found the land involved was rough and mountainous and had no value beyond coal to be produced therefrom. It was held the husband had reserved a mere personal privilege to mine coal, which ceased upon his death. In arriving at this conclusion, the court discussed the distinction between a conveyance of minerals or mineral rights and a grant of authority, license, or profit *a prendre.*

■ As pointed out and made clear in *Bostic,* when a grantee is entitled to mine ore or stone or cut timber and remove it, he has no interest in the land or in any ore save that actually mined; and his right to mine is not necessarily exclusive of the right of the owner or his assignees to do likewise, unless an exclusive right has been granted.[1]

The right reserved by the husband in the *Bostic* case was merely a right to mine and sell coal. Although the court was dealing with a reservation instead of a grant, the principle is of course the same. We also are dealing with a reservation in the case before us. Unlike Bostic's reservation, however, Rex Maurer did not reserve a right to mine and sell bentonite.

■ The Maurer reservation was for 90% of his "proportionate share of all Mineral Royalties" accruing to the benefit of his share of the described premises. There is nothing in the reservation to suggest the grantor intended to mine bentonite. He was not retaining a personal privilege in the nature of authority or license to mine and sell bentonite. He definitely reserved an ownership in the bentonite or a mineral right as distinguished from a license to take or profit *a prendre.*

■ As stated in 58 C.J.S. Mines and Minerals § 155, pp. 317–319, where the reservation is in effect a reservation of minerals in place, it constitutes a reservation of an estate or interest in minerals as land. However, where the reservation is merely of the right to enter and take minerals from the land, the reservation is a mere incorporeal right, privilege, or license to take minerals from the land, which gives the person having the privilege or license no title to the minerals until they have been mined.[2]

■ There can be no doubt that Rex Maurer reserved a title, estate and ownership in bentonite, as minerals in place. No personal privilege or license to take minerals from the land is involved. Hence, appellant must fail in her contention that the reservation in the deed from Rex Maurer to Mary Mauch became void and expired when the grantor died.

### The Evidence

Appellant assigns errors which have to do with the admission of evidence. For example, she says evidence offered by her relative to the grantor's intent should not have been excluded under the dead man's statute; she says evidence of the defendant pertaining to prior instruments should have been excluded; also that a defense witness should not have been allowed to express an opinion as to what the term "royalty" is considered to be in the bentonite mining industry.

■ It is settled law in our jurisdiction that where the terms of an instrument are plain and unambiguous, its meaning is to be deduced from the language of the instrument alone; but where the language is

---

1. The annotation in 66 A.L.R.2d 978 deals with the question of whether a reservation creates a separate and independent legal estate in solid minerals or passes only an incorporeal privilege or license.

2. For cases to this effect, see Hartness v. Young, Okl., 299 P.2d 171, 174–175; Duvall v. Stone, 54 N.M. 27, 213 P.2d 212, 215; Davis v. Mann, 10 Cir., 234 F. 2d 553, 560; Crothers v. General Petrole-

um Corporation, 131 Cal.App.2d 98, 280 P. 2d 182, 185; Gerhard v. Stephens, 68 Cal. 2d 864, 69 Cal.Rptr. 612, 442 P.2d 692, 705; Miller v. State, 121 Conn. 43, 183 A. 17, 19; Collier v. Caraway, Tex.Civ. App., 140 S.W.2d 910, 913, error refused; and Rio Bravo Oil Co. v. McEntire, 128 Tex. 124, 95 S.W.2d 381, 96 S.W.2d 1110. See also Picard v. Richards, Wyo., 366 P.2d 119, 123.

ambiguous, the intent of the parties may be searched out by resort to extrinsic inquiry. Goodman v. Kelly, Wyo., 390 P.2d 244, 247; Chandler-Simpson, Inc. v. Gorrell, Wyo., 464 P.2d 849, 851; and Cave Construction, Inc. v. United States for Use and Benefit of Angell Bros., Inc., 10 Cir., 387 F.2d 760, 762.

■ As previously noted, appellant claims it is self-evident from "the four corners of the quitclaim deed" that grantor intended to reserve a royalty interest which could only be in the nature of a "nonparticipating" royalty interest. We do not agree the interest reserved by Rex Maurer ended at the time of his death, as contended by appellant. And, while we admit the intent was not expressed as clearly as it could have been, we nevertheless find the reservation provision in the deed sufficiently clear and unambiguous for an interpretation without resort to extrinsic evidence.

■ Thus, plaintiff was not prejudiced by the exclusion of parol evidence offered by her concerning the grantor's intent. She also was not prejudiced by evidence of the defendant pertaining to prior instruments. Such evidence was probably irrelevant and immaterial. It could not have been prejudicial.

■ With respect to a defense witness having testified as to the meaning of "royalty" in the bentonite industry, we made it clear in Goodman v. Kelly, Wyo., 390 P.2d 244, 247, that when the provision is considered unambiguous, interpretation of the provision is for the court as a matter of law. We consider the interpretation of the reservation provision in the Maurer deed for the court, and the evidence complained of could not have been prejudicial.

### The Twister Claim

It is undisputed that all of the bentonite on the Twister Claim, the most valuable of the claims involved, had been sold prior to trial in this case. The Twister Claim was sold as the property of A. J. Maurer, Sr., deceased, and in the probate of his estate.

A. J. Maurer, Sr., was the father of Rex D. Maurer, Mary Mauch and Joan Ballou.

Appellant admits the sale of the Twister Claim was made pursuant to a probate order "and in strict conformity with the law." The trial court found the probate sale had been made without objection by any of the persons interested in the estate of A. J. Maurer, Sr., including the parties to this lawsuit. There was no evidence to the contrary.

The district court held the sale in the estate of A. J. Maurer, Sr., divested Rex D. Maurer and his heirs of any right, title or interest in the bentonite on the Twister Claim; that title to such bentonite had passed to the purchaser; that the proceeds were part of the A. J. Maurer, Sr., estate and had been properly distributed as such; also that the decree of final settlement and distribution in the father's estate had become res judicata and could not now be changed.

In challenging this portion of the district court's disposition, appellant again argues that, "when Rex D. Maurer died," all of his interest and rights went to plaintiff by reason of her deed. This is a repetition of the argument that the reservation in the deed became void and expired when the grantor died. We have made it clear there is no merit in this contention. We need not belabor it further.

The district court expressly held that the deed in question conveyed all other rights in the described property and ten percent of the mineral rights to Mary Mauch. If she did not get the ten percent she should have received, when distribution was made in the father's estate, relief cannot be afforded in this action.

■ Absent timely objections and appeal in connection with final distribution of the father's estate, and the absence of such is admitted, the decree therein has become res judicata and final. In re Estate of Brennan, Wyo., 433 P.2d 512, 516; Rubeling v. Rubeling, Wyo., 406 P.2d 283, 284; In re Kokesh's Estate, Wyo., 360 P.2d 368, 371.

We find no prejudicial error or reason to disturb what the district court has done in connection with any of appellant's assignments of error.

Affirmed.

GUTHRIE, J., not participating.

### ORDER

A petition for rehearing has been filed by appellant. It appears, however, that the only purpose of the petition is to have this court adjudicate matters which were settled and have become res judicata in connection with the probate of the estate of A. J. Maurer, Sr., Deceased. We have already made it clear in our opinion that such relief cannot be afforded in this action. Our holding in that regard is clear and not confusing as alleged by appellant.

Wherefore, it is ordered that the petition for rehearing be and the same is hereby denied.

GUTHRIE, J., not participating.