**STRANG TELECASTING, INC., a corporation, Appellant (Plaintiff below),**

v.

**Joseph P. ERNST, Mildred V. Ernst, and Chief Washakie TV, a Wyoming co-partnership, also known as KWRB–TV, Appellees (Defendants below).**

**No. 5225.**

Supreme Court of Wyoming.

May 9, 1980.

John Martin and John R. Vincent of Hettinger & Leedy, Riverton, for appellant.

Elmer J. Scott of Scott, Shelledy & Berryman, Worland, and Ruth Clare Yonkee, Thermopolis, for appellees.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

ROSE, Justice.

This is an appeal from a summary judgment denying a would-be buyer's suit for specific performance of a contract to sell a television station. The contract was conditioned upon the Federal Communications Commission approving the transfer of the license within one year from the date when the application for transfer was filed. This approval was not forthcoming within the one year contemplated by the contract. However, under the appellant-plaintiff-buyer's version of the facts—which we must accept as true for the purposes of examining the summary judgment adverse to the appellant—FCC approval would have been forthcoming within a month of the one-year deadline. The television-station owners, Joseph and Mildred Ernst, defendants-appellees, informed the appellant, Strang Telecasting, Inc., that they considered the contract for sale of the station terminated immediately after the one-year deadline for FCC approval expired. The principal issue for resolution is whether the district court was justified in awarding summary judgment holding that the sellers had the right to promptly terminate the sale agreement upon the passage of the above-discussed deadline.

We will affirm.

## FACTS RELATED TO THE PRINCIPAL ISSUE

The contract is ungrammatical and difficult to interpret. Pertinent portions are:

"3. *Consent of Commission:*

"a). Performance of the obligations of the parties under this agreement and the Closing of the transactions provided for herein are and shall be subject to the occurrence of the express condition precedent that the consent of the Federal Communications Commission ("Commission") shall have been granted to the assignment of the broadcast license of Station to Buyer and such consent shall have become a final non-appealable order.

"b). The parties agree to cooperate with each other in seeking the Commission's consent.

\*    \*    \*    \*    \*    \*

"11. *Termination:*

"a) This Agreement may be terminated by Seller or Buyer prior to the Closing, upon ten (10) days written notice to the other, if any of the representations or warranties of the other party are not performed during the period or at or before the time specified herein for such performance and such inaccuracy of a representation or warranty, failure of performance or an obligation or non-satisfaction of a condition if:

"I) such breach is capable of being cured and has not been cured within thirty (30) days after written demand therefore [sic], or

"II) has not been waived in writing in accordance with subparagraph 15c) hereof by the party seeking to terminate this Agreement.

"b) This Agreement shall be terminated without notice, if consent to the assignment of license of Station to buyer is denied or refused renewal by final order of the Commission.

"c) Within one (1) year after filing of applications pursuant to paragraph 3, the Commission's consent shall not have been granted to the assignment of license of Station to Buyer."

Paragraph 15 of the contract is entitled "Miscellaneous," and subparagraph "c)" states:

"Any notice, report, demand, waiver or consent required or permitted hereunder shall be in writing and shall be given by prepaid registered or certified mail, with return receipt requested, address as follows: . . ."

The contract was dated November 8, 1977. An application for transfer of the broadcast license was mailed to the FCC on January 27, 1978 and acknowledged on February 7, 1978. On February 8, 1979 (at which time FCC approval had not been granted), appellees notified the appellant that the contract was terminated.

Appellant's counsel presented the district court with an affidavit detailing his extensive experience as an employee of and practitioner before the FCC and offering his opinion that FCC approval would have been forthcoming within 30 days of the February 7, 1979, deadline had the contract not been terminated.

In his order announcing the summary judgment, the district court judge relied on the language of the contract, as well as a letter interpretation placed on the contract by Everett Hicks, appellant's vice president, in his communication to Mildred Ernst. Before reproducing pertinent portions of the letter, a few explanatory comments are in order. FCC approval of the transfer had been delayed in whole or in part because a third party, Associated Christian Broadcasters, had originally opposed the transfer. The parties had discussed this delay at an earlier meeting, apparently under the impression that the contract deadline for approval was one year after the signing of the contract. The letter recites an agreement with the Associated Christian Broadcasters under which their opposition to the transfer is to be dropped. It then continues:

". . . Consequently, it now should only be a matter of processing time in the Commission.

"In this regard, Mildred, since my return to New York, I have of course been rereading the existing sales contract on

KWRB with a good deal of care. It appears to me that your *option to cancel* does not take place one year from the date of signing the sales contract but rather one year from the date of filing the joint license transfer application with the Commission. To the best of my knowledge, this would make the *option* date at some time in late January . .

"When Stuart Strang and I were in Thermopolis on our recent trip, you were kind enough to indicate that so long as Strang brought all its filings up-to-date and it became simply a question of time before the Commission acted, you would be prepared to give us a reasonable extension beyond the supposed November 8th deadline. I sincerely trust, therefore, that the actual *cancellation* date which I have come up with by a literal interpretation of the contract terms, will be in conformity with your own thinking regarding a reasonable time extension. . . ." (Emphasis supplied)

## DISCUSSION OF THE PRINCIPAL ISSUE

It would appear that it is impossible to derive an absolutely literal-interpretation solution of the controversy from the contract language. Paragraph "11 c)" is not a sentence and doesn't tell us what is supposed to happen if FCC approval is not obtained within a year.

Paragraph "11 a)" is also opaque. In attempting to analyze it, we come up with the following reading, which also is not too helpful:

"This Agreement may be terminated by Seller . . . if any of the representations or warranties . . . are not performed . . . and such inaccuracy of a representation or warranty, failure of performance or an obligation or non-satisfaction of a condition [the remaining part of this thought is not present] if:

"I) such breach is capable of being cured and has not been cured within thirty (30) days *after written demand* therefore [sic], or

"II) has not been waived in writing. . . ." (Emphasis supplied.)

Do subparagraphs I and II refer only to breaches or do they also refer to failure of conditions? If they refer to conditions, what is the purpose of the potential requirement of subparagraph I of notice of the breach or non-occurrence of a condition if subparagraph I is alternative to subparagraph II which allows a termination so long as no written waiver has been obtained with respect to the breach or non-occurrence of a condition? Is subparagraph II intended to apply only to breaches or non-occurrences of conditions which, in contrast to those in subparagraph I, cannot be cured within 30 days? This latter query is significant because appellant claims it could have brought about the occurrence of the condition (that the FCC approve the transfer of the broadcast license) within 30 days of the time limit mentioned in subparagraph "11 c)."

We are unpersuaded that the language of the contract *clearly and unambiguously* gave the sellers the right to terminate the contract on February 8, 1979, without providing the buyer an opportunity to cure within 30 days the non-occurrence of the condition that the FCC approve the transfer of license. However, we are also of the opinion that the contract may be reasonably interpreted to justify the February 8, 1979, termination without opportunity to cure.

■ It is well-settled law that where the terms of an instrument are plain and unambiguous, its meaning is to be deduced from the language of the instrument alone; but where the language is ambiguous, the intent of the parties may be searched out by resort to extrinsic evidence. E. g., *Mauch v. Ballou*, Wyo., 499 P.2d 591, 593–594 (1972). Appellant argues that this necessary resort to extrinsic evidence involves factual issues not properly resolved in a motion for summary judgment.

■■ In interpreting an ambiguous instrument, the intent of the parties is material extrinsic evidence. *Mauch*, supra. If

there is a material factual dispute, summary judgment is inappropriate. E. g., *Weaver v. Blue Cross-Blue Shield of Wyoming*, Wyo., 609 P.2d 984 (1980).

■ Moreover, in reviewing an appeal from a summary judgment, the reviewing court looks at the record from the viewpoint most favorable to the party opposing the motion, giving to him all favorable inferences to be drawn from the facts contained in the record. *Weaver*, supra.

But, are we presented with a material factual dispute in this case?

In a recent appeal from a summary judgment, we pointed out that evidence in favor of a contention fatal to the cause of action will suffice to defeat the case on summary judgment *if* such evidence is not disputed by any direct or indirect contrary evidence. *Moore v. Kiljander*, Wyo., 604 P.2d 204, 206–207 (1979). Is there any evidence at all which disputes the evidence relied on by the district court? A logical place to start our search for such evidence would be the "Statement of the Case" section of appellant's brief where, under Rule 5.01(3), W.R. A.P.[1], there shall be "a statement of the facts relevant to the issues presented for review, with appropriate page references to the record." Although appellant's discussion in this portion of its brief details the ambiguities in the contract, no mention is made of facts which put into dispute those relied on by the district court. In *Dechert v. Christopulos*, Wyo., 604 P.2d 1039, 1044 (1980), we refused to consider an appellant's argument unsupported by a factual discussion as required by Rule 5.01(3), supra. We acknowledge that this court has often said that in reviewing an appeal from summary judgment, this court will put itself in the position of the trial court. E. g., *Weaver*, supra. In this case, we will review the record even if the appellant has not observed Rule 5.01(3), supra. On the other hand, Rule 1.02, W.R.A.P.[2], relied on in *Dechert*, supra, does give this court great discretion to impose sanctions (including the refusal to consider a contention) for violation of the Wyoming Rules of Appellate Procedure. The purpose of our appellate rules concerning briefs is to help focus the facts, issues and authorities. We appreciate that an advocate's inclination, in some instances, is to shield his client from a piercing revelation of the facts. Even so, an imprecise factual discussion will not profit the advocate's client in this court. We see no reason to tolerate a practice which can only succeed if this court is misled. In this case, we will disregard the appellant's failure to direct our attention to evidence which contradicts the evidence relied on by the district court in awarding summary judgment. In future cases, even those involving summary judgment, we will, however, feel free to exercise our Rule 1.02, W.R.A.P., discretion less leniently.

■ Having examined the record in great detail, we are unable to find any evidence whatsoever that appellant intended an interpretation different than that found by the district court. The evidence is to the contrary. As pointed out by the judge, appellant construed the contract to provide for a termination right if FCC approval was not obtained within one year of requesting it. Mildred Ernst and her son, in their depositions, concurred in this interpretation of the contract.

---

1. The sub-paragraph provides:

"The brief of the appellant shall contain under appropriate headings and in the order here indicated:

\* \* \* \* \* \*

"(3) A statement of the case. The statement shall first indicate briefly the nature of the case, the course of proceedings; and its disposition in the court below. There shall follow a statement of the facts relevant to the issues presented for review, with appropriate page references to the record."

2. The rule provides:

"The timely filing of a notice of appeal is jurisdictional. The failure to comply with any other of these rules or any order of court does not affect the validity of the appeal, but is ground only for such action as the reviewing court deems appropriate, including but not limited to citation of counsel or a party for contempt, refusal to consider the offending party's contentions, assessment of costs, or dismissal or affirmance."

It is true, as appellant points out, that Mildred Ernst was agreeable to granting appellant an extension from the earlier and erroneously computed deadline of November, 1978. However, Strang, the sole stockholder of appellant corporation, understood the extension to be for only two or three weeks.[3] We do not think this waiver on the part of Mildred Ernst is evidence which contradicts the evidence just cited relating to the parties' understanding of the contract.

We will affirm the district court because we conclude that there is no material dispute as to the fact issue of the parties' intentions.

### OTHER ISSUES

Appellant's statement of the issues is confusing. A statement of issues presents ten issues, but is followed by an argument section organized around five issues. These five are:

"4.1 MOVANT IN A SUMMARY JUDGMENT BEARS THE BURDEN OF

**3.** In its reply brief, appellant states:

"Appellees place unwarranted reliance upon Mr. Strang's statement in his deposition that he thought the extension was for from two to three weeks. The statement says nothing of the date from which the extension would have been granted, and Mr. Strang was often confused as to whether the questions were addressed to the October 25, 1978, date or the February 7, 1979 date. More importantly, Mr. Strang's testimony on page 7, lines 15–17, contradicts Appellees' version."

The deposition testimony, beginning with the question and answer containing the portion cited above, reads:

"Q. And tell me what the conversation was, what you said and what she said.

"A. Well, we notified her that we didn't think that a year would be long enough and we thought there would be problems with the Commission because they have come back to us with some letters of things that have to be corrected which we did correct—not at that time, but they were corrected. We had spoke [sic] to her about an extension of time and she said if everything was filed with the Commission that she would grant an extension of time.

"Q. An extension of time from when?

"A. From November on.

"Q. That was the anniversary date of the contract?

CLEARLY DEMONSTRATING THE ABSENCE OF A GENUINE ISSUE OF MATERIAL FACT AND APPELLANT IS ENTITLED TO EVERY FAVORABLE INFERENCE FROM THE EVIDENCE IN THE RECORD.

"4.2 THE CONTRACT AT ISSUE DID NOT PROVIDE THAT TIME IS OF THE ESSENCE: APPELLANT SUBSTANTIALLY PERFORMED ITS OBLIGATION TO APPELLEES.

"4.3 APPELLEES DID NOT COMPLY WITH THE TERMINATION PROCEDURES MANDATED BY THE CONTRACT: APPELLANT WAS WRONGFULLY DENIED ITS OPPORTUNITY TO 'CURE' ANY BREACH OF THE CONTRACT.

"4.4 APPELLANT REASONABLY RELIED UPON APPELLEES' ACTIONS AND REPRESENTATIONS AND CHANGED ITS POSITION TO ITS DETRIMENT: THE RECORD REFLECTS THE ELEMENTS OF PROMISSORY ESTOPPEL.

"A. Yes.

"Q. And the three of you were of the opinion at that time, without checking the contract, that the termination date, automatic termination date, was November 8, 1978?

"A. I'm not sure.

"Q. Well, you thought it was the anniversary date of the contract?

"A. Yes.

"Q. And if the contract was dated November 7, then the termination date would November 7 or 8, [sic] the following day; wouldn't it?

"A. Yes.

"Q. And what was Mildred's response?

"A. Oh, that she would indeed do that if we had everything filed with the Commission in proper order.

"Q. Do you remember anything being said about, 'I hope we get this thing put up by Christmas as a Christmas present'?

"A. No, I don't. I don't remember.

"Q. You don't remember that. Okay. When she gave you an agreed on an extension of time, did she indicate how long an extension?

"A. She did not indicate it. She didn't specify in numbers.

"Q. Did she indicate generally what she was talking about?

"A. I took it to mean two or three weeks."

"4.5 THE EVIDENCE SOUGHT THROUGH APPELLANT'S MOTION TO COMPEL ANSWER IS REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE: THE LOWER COURT ERRED IN DENYING APPELLANT'S MOTION TO COMPEL ANSWER."

As we have already made clear, we have no quarrel with appellant's Argument 4.1. See the discussion in *Kiljander*, supra, and *Weaver*, supra. Appellant's Arguments 4.2 and 4.3 are answered by our discussion of the trial judge's factual conclusion based on uncontradicted evidence, as well as by the observation that this court will not undertake to rewrite a contract where the parties' intentions are clear. E. g., *Quin Blair Enterprises, Inc. v. Julien Construction Co.*, Wyo., 597 P.2d 945, 951 (1979). In the case at bar, an ambiguous contract lends itself to an interpretation in accord with the parties' intentions and should be so interpreted.

### *Promissory Estoppel?*

In its Argument 4.4, appellant argues that Mildred Ernst's allowance of additional time beyond the erroneously computed November, 1978 deadline fell within the following principle:

"§ 90. PROMISE REASONABLY INDUCING DEFINITE AND SUBSTANTIAL ACTION.

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." (Restatement of Law, Contracts)

■ As we have previously said in discussing the Everett Hicks letter, the parties had met when it appeared that FCC approval would not be forthcoming one year from the date of the signing of the contract. At that time Mildred Ernst indicated that she would allow some additional time. Appellant claims that this promise caused it to go to additional expense in pursuing the FCC application and that it would now be

unjust for a court to allow Mrs. Ernst to strictly enforce the contract deadline. We do not agree because we think the undisputed facts show that the extension granted by Mrs. Ernst and contemplated by the parties expired well in advance of the February, 1979, deadline mentioned in the contract and enforced by the Ernsts. Although appellant hotly disputes this conclusion, we believe that the deposition of Stuart Strang, sole shareholder of Strang Telecasting, Inc., clearly shows that he understood the extension to be for a period of two or three weeks. This conclusion is discussed in more detail in fn. 3, supra. In her deposition, Mildred Ernst placed the extension period at six or seven weeks. Under either version of the extension, appellant was not led to believe that obtaining FCC approval sometime after February 8, 1979, would be satisfactory.

Before leaving this matter, it is also necessary to discuss Stuart K. Strang's affidavit and the affidavit of Everett K. Hicks. Strang's affidavit repeats some of his deposition testimony concerning an extension of time granted by Mrs. Ernst (from the November, 1978, deadline). The affidavit does not contradict Strang's deposition testimony and is merely redundant to it. The affidavit also omits some of the statements made against his interest that were elicited during the deposition. Since the affidavit does not disavow those statements (to the extent that the extension was for only two or three weeks), we do not view ambiguity in the affidavit (with respect to the length of the extension) as creating a genuine and material factual dispute.

The Hicks affidavit repeats the allegation that Mrs. Ernst, at an October 25, 1978, meeting shortly before the supposed November, 1978, deadline, stated "that defendants would grant an extension of time for a reasonable period. . . ." But the affidavit does not put into dispute the Strang and Ernst deposition testimony that the extension was for two or three or six or seven weeks only. The Hicks affidavit also states that appellant had various communications with Mrs. Ernst concerning FCC

approval. In these communications appellant indicated its vigorous pursuit of FCC approval. The affidavit avers that Mrs. Ernst never, in various conversations, informed appellant of her plan to terminate the contract until January 31, 1979. The affidavit states that appellant had relied on the absence of earlier mention of termination to assume that it would be allowed the necessary time to obtain FCC approval.

However, the affidavits, taken with the depositions, do not establish an allegation that Mrs. Ernst promised an extension beyond the February 8, 1979, deadline.

### Discovery

■ During the course of her deposition, Mildred Ernst reported hearing that Everett Hicks, the Strang vice president, was a difficult person from whom to obtain money due and owing. She also reported hearing some other uncomplimentary remarks about appellant. She refused to state the source of this gossip. Appellant-plaintiff unsuccessfully moved the district court to compel her to answer the question. Appellant's Argument 4.5 is that this action by the district court was error.

During argument on the motion to compel the answer, plaintiff-appellant argued that the answer (source of this gossip) was relevant to its lawsuit because it bore on the motivation of the appellees in terminating the contract. Defendants-appellees argued that their motivation for exercising their right to terminate the contract was irrelevant, and we agree. Appellant also argues that if it could discover who had said these bad things it might have a cause of action against the declarants. The notice

of appeal in this case is from the judgment and does not serve to confer upon this court jurisdiction to review a court order not pertinent to the judgment but bearing only on possible rights appellant may have against unknown third parties. Appellant also argues that had Mildred Ernst been forced to name the declarants, appellant could have deposed the declarants and if they denied making the uncomplimentary remarks it could then have impeached Mildred Ernst. Since we have already concluded that Mrs. Ernst's motivation for terminating the contract is irrelevant, we fail to see how the district court's denial of the speculative opportunity to impeach her on an irrelevant issue was reversible error. Rule 26(b)(1), W.R.C.P.[4], relied on by the appellant, limits discovery to relevant matters. E. g., *Lumbermen's Mutual Casualty Company v. Pistorino & Company, Inc.*, 28 F.R.D. 1, 2 (D.Mass.1961).

Finally, there is undisputed evidence to the effect that appellees made a contract with a third party before they terminated the contract, which provided for the third party to buy the television station if the contract with appellant was terminated. Arguably, this agreement was in violation of a provision[5] of the contract (Paragraph 7(f)(IV)) between appellant and appellees prohibiting appellees from engaging in any transaction not in the ordinary course of business. Appellant argues that discovery of the persons alleged to have made unfavorable comments about appellant might have led to possible evidence of the appellees' solicitation of other possible buyers. However, we fail to see the relevance of the appellees' alleged breach. The contract between appellees and a third party was

---

4. Rule 26(b)(1), W.R.C.P., provides:
   "(b) *Scope of discovery.*—Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
   "(1) In General.—Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and

location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence;"

5. Appellees argue that the purpose of this provision was merely to conserve the assets of the business.

merely an alternative arrangement in the event that the contract with the appellant was terminated. Had the conditions of the original contract between appellees and appellant been satisfied, appellant would have incurred no detriment as a result of this alleged breach. Since the conditions of the original contract did not occur and appellant was not entitled to benefit from the contract, we fail to see how this alleged breach harmed appellant.

The summary judgment of the district court is affirmed.

ROONEY, Justice, specially concurring.

My concurrence in this matter is founded only on: (1) the proposition that the construction or legal effect of a contract must be determined as a matter of law, *Goodson v. Smith*, 69 Wyo. 439, 243 P.2d 163 (1952), reh. den. 69 Wyo. 439, 244 P.2d 805 (1952); *Engle v. First National Bank of Chugwater*, Wyo., 590 P.2d 826 (1979); and (2) the controversy in this case requires only a construction of a contract.

Paragraph 11 of the contract provides in pertinent part:

"11. *Termination:*

\* \* \* \* \* \*

"c) Within one (1) year after filing of applications pursuant to paragraph 3, the Commission's consent shall not have been granted to the assignment of license of Station to Buyer."

There is no disagreement between the parties that such applications were filed; that one year had elapsed since the filing; and that the commission's consent had not been granted.

The contract term is plain and unambiguous and should be applied. The contract terminated one year after the application was filed inasmuch as the commission's consent had not been granted. Appellant suggests that other terms of paragraph 11 make an ambiguity. However, such other

terms apply to representations or warranties not performed "by the other party" and to denial of the application as distinguished from inaction by the commission.[1] Appellant also contends that the omission of a "time is of the essence" provision makes the language of the contract mean something other than what it says. The quoted portion of paragraph 11, supra, is a "time is of the essence" clause. As said in *Quinlan v. St. John*, 28 Wyo. 91, 100, 201 P. 149, 150 (1921), reh. den. 28 Wyo. 91, 203 P. 1088 (1922):

"'When it is said that time is of the essence, the proper meaning of the phrase is that the performance by one party at the time specified in the contract or within the period specified in the contract is essential in order to enable him to require performance from the other party.' 2 Williston on Contracts, 1621. 'Although it seems now to be customary to insert that "time shall be of the essence of the contract" if it is so intended, yet an examination of the cases will show that these words are not essential. Any words that show the intention of the parties to be that time shall be of the essence of the contract, *or any clause which provides in unequivocal terms that if the fulfillment is not within a specified time the contract is to be void will have that effect.*' 6 R.C.L. 899. See, also, note in 104 Am.St. Rep. 268 et seq.; 39 Cyc. 1369. \* \* \*" (Emphasis supplied.)

Appellant further contends that there was an oral agreement to extend the time for approval of the applications by the commission. Paragraph 15(c) of the contract is specific in requiring such waiver to "be in writing." Courts do not rewrite contracts for the parties, and to not give effect to the contractual provision which requires written waiver would be to rewrite the contract. The same can be said with reference to appellant's contention that forfeiture results from our holding. We do not favor interpretation of contracts which results in

---

1. See quotations of paragraph 11 in the majority opinion.

forfeitures, but neither can we rewrite a contract simply because it contains clear forfeiture provisions. In other words, forfeitures are not favored, but forfeiture provisions are not illegal and they will be recognized when required by clear provisions of a contract. *Rush v. Kirk*, 10th Cir. 1942, 127 F.2d 368; *Sanders v. Sanders*, 40 Tenn. App. 20, 288 S.W.2d 473 (1955); *Branker v. Bowman*, 62 Ariz. 214, 156 P.2d 898 (1945); and *Engle v. First National Bank of Chugwater*, supra.

I agree with the disposition of the discovery issue as set forth in the majority opinion.